26 Cal.App.4th 1033 (1994)
31 Cal. Rptr.2d 749
In re the Marriage of TERI D. and DANIEL T. FINI.
TERI D. PEDERSON, Appellant,
v.
DANIEL T. FINI, Respondent.
Docket No. A063499.
Court of Appeals of California, First District, Division Five.
July 12, 1994.
*1035 COUNSEL
Jackson E. Morrison for Appellant.
Mathews & Kluck and Francis B. Mathews for Respondent.
OPINION
KING. J.
(1a) In this case we hold that in ordering additional child support for employment-related child care costs and for uninsured medical expenses, if the parents' income is not disparate, the trial court possesses discretion to determine whether to order these expenses shared equally or in proportion to the parents' net disposable income.
Teri D. Fini (now Pederson) appeals from a child support order, contending the trial court failed to apportion employment-related child care and uninsured medical costs between herself and her former husband, Daniel T. Fini, in accordance with the governing statute.
In May 1991, Daniel and Teri[1] obtained a judgment dissolving their marriage. The marital settlement agreement incorporated therein awarded the parties joint legal and physical custody of their two school-aged children, who would be in Daniel's custody two days a week after school, alternate weekends, and half of Christmas vacation. Daniel and Teri would divide other vacations, including long weekends, equally. Daniel was to pay child support of $300 per month per child, and responsibility for the children's uninsured medical expenses would be shared equally. Teri's expected child care costs were expressly included in the $600 per month child support.
On December 31, 1992, Teri filed an income and expense declaration showing net monthly disposable income of $929.81. On January 4, 1993, she *1036 obtained an order to show cause for modification of child support pursuant to former Civil Code section 4721 (now Fam. Code, §§ 4055-4069[2]), asking that basic child support be raised to $770 per month, and that Daniel pay, in addition, all child care and uninsured medical expenses. She attached a letter from her child care provider to support her claimed day care costs of $250 per month.
In response, Daniel asked that child support be lowered to $419 per month, and consented to have employment-related child care costs divided in proportion to the parties' respective adjusted net disposable incomes. He also asserted Teri had not been paying her half of uninsured medical expenses as per the prior judgment. Daniel's income and expense declaration showed net monthly disposable income of $1,898, and claimed monthly child care costs of $200.
*1037 In a supplemental declaration, Teri withdrew her request for modification of the basic child support order, but asked that child care costs and uninsured medical expenses be pro rated between the parties according to their net incomes.[3] She also submitted an additional letter from her child care provider to support her allegation that Daniel had paid an average of $150 per month in October and November 1992. Teri claimed that since then Daniel had been leaving the children with his parents at no cost to him.
Daniel then filed a declaration alleging Teri had not reimbursed any part of $1,329.64 he had paid in uninsured medical expenses for the children. He further alleged her claimed child care costs were not entirely employment related, and that his parents had offered to care for the children as needed without remuneration. In estimating the percentage of time he was responsible for the children he claimed six weeks during the summer not mentioned in the marital settlement agreement.
Teri responded by declaring her $250 per month child care payments entirely work related. Daniel reiterated his parents' willingness to assume day care responsibilities free of charge.
At a subsequent hearing on April 16, 1993, it was established that Teri had started a new job but had not yet received a paycheck. She testified she and Daniel shared possession of the children as set out in the marital settlement agreement, except she acknowledged Daniel also has them six weeks in the summer.
Daniel testified he did not pay his parents for day care because on the afternoons he has the children his parents take care of them until he gets home from work. Asked about his $200 per month child care claim, he stated, "I pay for food or whatever." He thought the things he bought "add up to $200." He had paid the child-care provider "a couple times," but not in 1993. On cross-examination, Daniel explained, "I have given [my parents] *1038 money, yes.... But most of the time I give them food or clothes, or whatever they need. I bought them things for the house, you know. It's just, they are my parents; they're trying to do this for me, but yet I compensate in other ways, so that they have to accept something from me."
The trial court asked Teri to submit a current income and expense declaration based upon her new employment, and declared Daniel's "time-share" with the children to be 36 percent. When asked about child care expenses, the court said, "I declare them awash [sic]." Teri's counsel attempted to raise the "uncovered medical expenses" to no avail.
Teri filed a revised income and expense declaration showing net monthly disposable income of $1,143.83, although she earned somewhat more the first two weeks due to overtime and mileage. On April 28, 1993, the trial court filed a "ruling" which stated Daniel's time share was 36 percent, Daniel's net monthly income was $1,898, and Teri "avers" a net monthly income of $1,141.[4] It then ordered Daniel to pay total monthly child support of $437 in accordance with an attached child support worksheet ($273 for the younger child, $164 for the older).
Teri filed a motion requesting clarification of the ruling on the ground the court had not ruled on the issues of day care costs and uninsured medical expenses. At a hearing on June 24, the trial court ruled its prior statements in open court "dispose of the argument rightly or wrongly." As to day care costs, "each had an obligation ... it was a wash." According to the minute order, "Court indicated that ruling remains." On August 4, 1993, the court filed its findings and order after hearing in conformity with the prior rulings.
(2a) On appeal, Teri contends the trial court abused its discretion by failing to order day care costs and uninsured medical expenses shared in proportion to the parties' incomes, (section 4061, subd. (b)) and in the alternative, the trial court erred in not ordering those expenses divided equally (section 4061, subd. (a)).
*1039 (3) "It is a well established rule of statutory construction that the word `shall' connotes mandatory action and `may' connotes discretionary action." (REA Enterprises v. California Coastal Zone Conservation Com. (1975) 52 Cal. App.3d 596, 606 [125 Cal. Rptr. 201], citations omitted.) Thus, section 4062 mandates ("the court shall order") additional child support for employment-related child care costs and reasonable uninsured health care costs, while it makes discretionary ("the court may order") additional child support for educational or special needs of a child or for travel expenses for visitation. Among the family law bench and bar, these are usually referred to as mandatory or discretionary add-ons.[5]
(2b) As to uninsured health care costs, the trial court in this case made no ruling. Thus, in effect, it denied Teri's motion for modification of the existing order which required that the parties share uninsured medical expenses for the children equally. Given the modest difference in the net incomes of the parties, and the absence of a statement of decision, we must assume, pursuant to section 4061, that the court found it was not "appropriate," as that word is used in section 4061, to order an apportionment of these expenses in proportion to their net disposable incomes.
As to child care costs, the trial court called it "a wash." This means either the parties' expenditures are equal or proportionate to their net disposable incomes or, given the modest differences in net disposable income and the respective child care arrangements, under section 4061 it was not "appropriate to order payment based on net disposable incomes." We interpret the trial court's order to be that each party should bear the expense of his or her own work-related child care expenses.
The court's action in leaving the existing order in effect as to the equal sharing of uninsured medical expenses and in finding no order was appropriate as to employment-related child care was clearly within the court's discretion. (1b) The language as to mandatory add-ons for employment-related child care and reasonable uninsured medical expenses in section 4062 is clearly qualified by the language in section 4061 which provides that the amounts in section 4062 "if ordered to be paid" shall be one-half to each *1040 parent unless "the court determines it is appropriate to apportion expenses under section 4062 other than one-half to each parent."
We cannot conclude without commenting about what the Legislature has done in adopting California's child support statutes. These statutes were adopted under the compulsion of federal law requiring each state to adopt child support guidelines which create a rebuttable presumption that the amount established by the guideline is correct, although the presumption can be rebutted and a different amount ordered if there is a finding in writing or on the record that the application of the guidelines would be unjust or inappropriate. (42 U.S.C., § 667.)[6]
Instead of adopting a guideline, California's Legislature adopted an algebraic formula to calculate the presumptively correct amount of child support which will usually require the use of a computer and a software program to determine the amount of child support under the formula. There is no way the parties can understand how the court determined the amount ordered. This is particularly true as to parties in child support proceedings  well over 50 percent  who are unrepresented by counsel because they cannot afford to be represented by counsel.
These are proceedings where emotions and the level of conflict are already running high. A bad situation becomes more inflamed when an order for child support is calculated in a manner which the parties do not understand.
Indeed, the entire statutory scheme appears to be an unprecedented effort by the Legislature to micromanage child support hearings and determinations in a manner which was neither contemplated nor required by federal law. The result is a process of determining child support which is complex and unduly costly, which requires the use of a computer and which is not *1041 understood by anyone, least of all the affected parties. There is no way that either the payor or the recipient of child support, even if represented by counsel, can comprehend how the court determined the amount ordered. As the trial court stated during the course of one of the seven separate hearings in this case: "I guess you're pointing up the absurdity of the legislative efforts in this area, aren't you? How do we get to these guys? Maybe somebody [who] authored this bill should explain it."[7]
What was once a short, simple, inexpensive process, easily understood and accepted by the participants, has become an increasingly costly and confusing nightmare. This process previously occupied little court time, but it is now so complicated, especially for the increasing number of parties representing themselves, that it now occupies considerable amounts of court time in an already overburdened court system.[8]
We pride ourselves on a system of justice, especially in family law cases. In a just system, parents being ordered to pay or receive child support deserve to know how the amount of the support was arrived at and that the process used is one that is fair and reasonable to both the payor and the payee. This would not only make it more likely that the order will be complied with, but it would also eliminate the amount ordered for child support as a source of ongoing conflict between the parents, the fallout from which is clearly harmful to the child. It is indeed unfortunate that the Legislature, in its efforts to micromanage child support, lost sight of how important it is that the parents understand and accept the fairness of the calculation. Without this, the payor always believes the amount ordered is inappropriately high, and the payee believes it is too low, leaving the parents with unnecessary ongoing conflict indisputably detrimental to the child.
*1042 The record before us does not disclose the amounts of attorney fees and costs for the parties in this case although it certainly has been astronomical when compared to the amount of child support at issue. The record does disclose that each attorney was charging $150 per hour, a reasonable fee, and that Teri paid her attorney a retainer of $1,122 of which apparently $782 had been expended as of the first of the seven hearings. It seems likely, considering preparation, paperwork, discovery and court appearances, as well as this appeal, that the parties have each incurred thousands of dollars in fees for this dispute, which began as a request by Teri to increase child support and has resulted in a $153 reduction.
The Legislature has adopted a detailed and relatively inflexible child support statutory scheme much akin to the Internal Revenue Code.[9] It lumps all California parents together and treats all the same, failing to recognize the differences in circumstances which occur from case to case. There may be good reason to have hard and fast rules and eliminate discretion in applying tax laws, since there seems to be little concern about tax laws causing inequities. However, it is unwise to adopt harsh, inflexible rules for child support which will inevitably cause hardship and inequity.[10]
*1043 We conclude our comments on the child support statute by mentioning its effect on the ordering of spousal support. Given the significant increase in the proportion of the payor's income now ordered for child support, the Legislature has virtually eliminated orders for spousal support in all but higher income cases, if the parties have minor children. Although this was unintended and probably never contemplated by the Legislature, the fact is that after the order for the amount payable as child support the payor simply does not have sufficient income left to permit spousal support to be ordered paid.[11] (See In re Marriage of Carter, ante, p. 1024 [33 Cal. Rptr.2d 1].)
The facts and circumstances of the parties in each family law case are different, which is why these cases are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity. It is for this reason that the author of the child support statute, later in the same legislative session in which it was adopted, ushered in another bill making clear "that it was not the intention of the Legislature to eliminate family law judges' traditional discretionary authority to adjust child support orders in individual cases where fairness requires it." (See Summary of Sen. Bill No. 1614 (Hart) (1991-1992 Reg. Sess.), attached hereto as an appendix.) This makes clear that the court, in child support cases, is not just supposed to punch numbers into a computer and award the parties the computer's result without considering circumstances in a particular case which would make that order unjust or inequitable. (See County of Lake v. Antoni (1993) 18 Cal. App.4th 1102 [22 Cal. Rptr.2d 804].) Otherwise, there would be no need for a judge; all you would need would be a computer.
For this reason, the only two appellate court decisions on this subject since the new child support law was enacted have both upheld the exercise of discretion as broadly as possible under the statute. In County of Lake, supra, the court upheld the use of the rebuttal factor that an order of the presumptive amount would be unjust or inappropriate, and ordered child support of less than the presumptively correct amount under the formula because the payor had an extraordinarily high amount of monthly debt service incurred for living needs and was providing support for his child *1044 from his current spouse and her child from a prior relationship. In Estevez v. Superior Court (Salley) (1994) 22 Cal. App.4th 423 [27 Cal. Rptr.2d 470], a case involving an extremely high income payor, the appellate court granted a writ precluding discovery of the payor's actual income because the presumptive amount of child support, using what the payor alleged his income was, would result in a child support order far in excess of the children's needs. Thus the appellate court did not require the specified mandatory findings required by section 4056, subdivision (b). The result in Estevez, although it contravenes the statutory requirements, is clearly correct since it makes no sense to require the wasteful expenditure of attorney fees and costs to discover the payor's true income when no child support order would be based upon it.
We join the courts in County of Lake and Estevez by holding in this case that the court in child support proceedings, to the extent permitted by the child support statutes, must be permitted to exercise the broadest possible discretion in order to achieve equity and fairness in these most sensitive and emotional cases. This can be done without sacrificing the goal of consistency so prized by the Legislature.
The order is affirmed. The parties shall bear their own attorney fees and costs on appeal.
Peterson, P.J., and Haning, J., concurred.

*1045 APPENDIX

[Letterhead]

GARY K. HART SENATOR EIGHTEENTH DISTRICT

CHAIRMAN EDUCATION COMMITTEE

SUMMARY Of SB 1614 (HART)
SB 1614 is an urgency measure which will become effective as soon as the Governor signs it within the next few weeks. The bill had unanimous bi-partisan support, passing the Assembly by a vote of 72-0 and the Senate by a vote of 33-0. The Governor's Office has informed Senator Hart that the Governor supports SB 1614 and will sign this important child support measure.
SB 1614 has several important child support reform provisions. It fills a gap in the state's wage assignment law and adds provisions requested by the Administration to meet federal requirements for child support enforcement.
The bill also makes several improvements to Senator Hart's child support legislation of last year through the assistance of Justice Donald King of San Francisco. The gist of the amendments to the new child support guideline is to make clear that judges retain their traditional authority to prevent large child support increases from occurring in cases where such increases will cause hardships on the children in new families or in other cases where large increases would be unjust or inappropriate.
Specifically, the guideline amendments in the bill:
1) Clarify that it was not the intention of the Legislature to eliminate family law judges' traditional discretionary authority to adjust child support orders in individual cases where fairness requires it.
2) Clarify that family court judges retain flexibility when dealing with complex family situations where parents have different time-sharing arrangements with different children.
3) Clarify that the courts need only make the eight findings in the bill when either party specifically requests these findings.
4) Clarify that the new guideline does not require a determination of precise percentages that parents share their children, only an approximate one.
*1046 6) Delete the obsolete mathematical formula in the "hardship deduction" provision designed to ensure children in new families receive adequate support while retaining current policy in this area.
7) Add an option for both parents to agree to split additional child support costs such as child care 50/50.
NOTES
[1] For ease of reference, we will refer to the parties by their first names. (See In re Marriage of Smith (1990) 225 Cal. App.3d 469, 475-476, fn. 1 [274 Cal. Rptr. 911].)
[2] In this opinion we use statutory references to the Family Code. Family Code sections 4061 and 4062 were, respectively, former subdivisions (i) and (j) of Civil Code section 4721.

Family Code section 4061 provides: "The amounts in Section 4062, if ordered to be paid, shall be considered additional support for the children and shall be computed in accordance with the following: [¶] (a) If there needs to be an apportionment of expenses pursuant to Section 4062, the expenses shall be divided one-half to each parent, unless either parent requests a different apportionment pursuant to subdivision (b) and presents documentation which demonstrates that a different apportionment would be more appropriate. [¶] (b) If requested by either parent, and the court determines it is appropriate to apportion expenses under Section 4062 other than one-half to each parent, the apportionment shall be as follows: [¶] (1) The basic child support obligation shall first be computed using the formula set forth in subdivision (a) of Section 4055, as adjusted for any appropriate rebuttal factors in subdivision (b) of Section 4057. [¶] (2) Any additional child support required for expenses pursuant to Section 4062 shall thereafter be ordered to be paid by the parents in proportion to their net disposable incomes as adjusted pursuant to subdivisions (c) and (d). [¶] (c) In cases where spousal support is or has been ordered to be paid by one parent to the other, for purposes of allocating additional expenses pursuant to Section 4062, the gross income of the parent paying spousal support shall be decreased by the amount of the spousal support paid and the gross income of the parent receiving the spousal support shall be increased by the amount of the spousal support received for as long as the spousal support order is in effect and is paid. [¶] (d) For purposes of computing the adjusted net disposable income of the parent paying child support for allocating any additional expenses pursuant to Section 4062, the net disposable income of the parent paying child support shall be reduced by the amount of any basic child support ordered to be paid under subdivision (a) of Section 4055. However, the net disposable income of the parent receiving child support shall not be increased by any amount of child support received." (Italics added.)
Family Code section 4062 provides: "(a) The court shall order as additional child support: [¶] (1) Child care costs related to employment or to reasonably necessary education or training for employment skills. [¶] (2) The reasonable uninsured health care costs for the children. There is a rebuttable presumption that the costs actually paid for the uninsured health care needs of the children are reasonable. [¶] (b) The court may order the following as additional child support: [¶] (1) Costs related to the educational or other special needs of the children. [¶] (2) Travel expenses for visitation." (Italics added.)"
[3] Teri's action in withdrawing her request for an increase in the amount of the basic child support at this point in the process was a classic case of closing the barn door after the horse is gone. The district attorney, representing Teri, had filed a motion for an increase in child support six months earlier, but had withdrawn it because Daniel was paying more child support under the existing order than the presumptively correct amount under former Civil Code section 4721. Teri or her new attorney, in filing the order to show cause at issue here, apparently believed Daniel's income was greater than it was, and when this assumption turned out to be incorrect, her request for an increase in the basic child support amount was withdrawn. However, because the existing order included a child care component within it and because in response to Teri's motion Daniel had requested a reduction of his child support obligation, the issue of modification of child support was before the court and the child support formula resulted in a reduction of the child support Daniel was ordered to pay from $600 to $437.
[4] The record is unclear as to exactly what Teri's income was at the time of the order. The court may have accepted Teri's representation on her income and expense declaration in reaching its conclusion that she "avers" a net monthly income of $1,141, even though her initial paycheck was greater than this because of overtime. This is part of the problem with the requirements of the child support statute. It may have been impossible to determine exactly what Teri's net disposable income would be on her new job, especially if her future opportunity for overtime pay was uncertain. In any event, the parties' income is subject to change at any given time especially if overtime is worked. It appears that Teri's "averred" net monthly disposable income was $1,141 and Daniel's was $1,461 ($1,898 less $437 basic child support under the formula). Thus Daniel earns about 56 percent and Teri about 44 percent of their total adjusted net monthly disposable income of $2,602, although if Teri does work overtime it may be approximately equal.
[5] The statutory language concerning additional child support in the discretion of the court for travel expenses for visitation is confusing, because such expenses are usually incurred by the noncustodial parent who is paying child support. Under these circumstances, it is a misnomer to call it additional child support or an add-on, since incurring the financial burden of this expense usually will result in some reduction of the child support otherwise ordered. In this sense, although semantically peculiar, it might more properly be called a negative add-on.

In any event, as we hold in this case, if the income of the parents is not disparate the court has discretion to apportion mandatory add-ons equally or in proportion to each parent's net disposable income.
[6] 42 United States Code section 667 provides: "(a) Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts. (b) (1) The guidelines established pursuant to subsection (a) of this section shall be made available to all judges and other officials who have the power to determine child support awards within such State. (2) There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case. (c) The Secretary shall furnish technical assistance to the States for establishing the guidelines, and each State shall furnish the Secretary with copies of its guidelines."
[7] No legislator can explain it. In the late spring of 1992, when the bill enacting the present child support statute to be operative July 1, 1992, was being passed by the Legislature, the author, and then other legislators, were invited to attend the annual Family Law and Procedure Institute to discuss it with California's family law judges. All declined, and one was frank enough to state no legislator would accept an invitation to discuss the statute because no legislator understood it.
[8] This case is an excellent example of how a simple process has become so complex and so costly. Under prior law, there would have been one hearing, a comprehensible order issued with the parties understanding how it was arrived at and no appeal. Instead, there were seven separate court hearings in this case which is ridiculous. The parties were not only disputing what should be fixed as their net disposable income, but also who provided what child care and how many days of the year each parent should be considered to have the custody of the children. There were arguments as to whether the time the children were in school counted as time with one parent or the other, as well as how much time should be counted with which parent for holiday weekends, depending on whether the holiday each year fell on the weekend the children were with their father. This is an absurd waste of valuable and costly court time, as well as costing the parties remarkably high attorney fees and costs for what would have been a simple matter. The appeal has taken place solely because of the statutory language enacted by the Legislature.
[9] As complicated as the Internal Revenue Code may be it uses percentages of income, not an algebraic formula. Percentages of income are much more easily understood than an algebraic formula.
[10] It might help to discuss three of the many circumstances which demonstrate how the inflexibility of the child support statutes is creating havoc and undue hardship and, in the third, is probably reducing the amount of child support ordered. First, there is little dispute, even among family support bureaus of district attorneys' offices charged with seeking and enforcing child support orders, which certainly do not have the reputation of feeling sorry for payors, that the presumptively correct amount of child support under the formula does not leave low income payors with sufficient money on which to live.

Secondly, a rote application of the formula can produce absurd results. In a case where the parents equally share custody of two children and have a combined net disposable income of $50,000 a year, the formula allocates $30,000 (60%) each year to the cost of raising the children or $15,000 (30%) per child, but only $20,000 (40%) for the living expenses of the parents or $10,000 (20%) for each adult. Obviously, this is absurd and cannot be justified.
Although the foregoing demonstrates how the inflexibility of an algebraic formula computing a presumptively correct amount of child support can produce results which are unjust or inequitable, a third example demonstrates how it can actually reduce the amount of child support which would otherwise be ordered. If, during the marriage, a spouse works overtime or at a second job in order to keep the intact family financially afloat, the same incentive does not exist upon separation and divorce. The child support statute provides a disincentive to continue this extra employment since it makes the same proportion of income from extra employment payable as child support as is paid from base employment. Pursuant to In re Marriage of Simpson (1992) 4 Cal.4th 225 [14 Cal. Rptr.2d 411, 841 P.2d 931] a party is only required to work an ordinary work regimen upon separation, and thus is free to reduce his or her income by not working overtime or at a second job as was done prior to separation. The better practice would be to provide the worker with additional incentive to continue the extra work by allowing him or her to keep a higher proportion of the extra income than is done with the income from base employment as we discussed in In re Marriage of Smith, supra, 225 Cal. App.3d at page 493, footnote 15. This would provide more income for each parent and the child, but is not permitted by the present child support statute.
[11] It may be unfair to say the Legislature did not contemplate this result. It may well be that by providing in section 4053, subdivision (f), that children share in the standard of living of both parents and recognizing that child support may improve the standard of living of the custodial parent, that the Legislature may have intended that child support equalize the standards of living of the parents making spousal support unnecessary, except in high income cases.