[No. G023735. Fourth Dist., Div. Three. June 6, 2000.]

In re the Marriage of ROBIN K. and ROBERT W. HALL.
ROBIN K. HALL, Respondent, v.
ROBERT W. HALL III, Appellant.

## COUNSEL

Law Offices of Anthony Walker and Anthony Walker for Appellant.

Farnell & Norman, R. Richard Farnell and Ronald E. Norman for Respondent.

## OPINION

**SILLS, P. J.—** This is one of those rare "judgment roll" appeals that merits a reversal, essentially because of the rigid structure of California's child support statutes combined with the requirement that any deviation from formula guidelines be sua sponte articulated by the trial judge. Here, the trial court made a child support order which would require payment of an arbitrary percentage of one parent's income above a certain level without regard to fluctuations in the other parent's income. The order differs on its

face from the formula guideline set forth in Family Code section 4055,[1] but cannot be saved as an exercise of discretion because the court did not make the requisite statements required by section 4056. That statute is clear that a court *cannot* exercise its discretion in making a child support order without saying why, either in writing or on the record. In this regard we also elaborate on Justice King's trenchant remarks in *In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1041 [31 Cal.Rptr.2d 749] about the importance to the public's respect for the family courts that judges explain to parents the process by which a child support order has been calculated.

### The Record

The case involves two well-paid professionals, Robin K. Hall, a certified public accountant, and Robert W. Hall III, a product manager for Unisys Corporation. They have one minor child, Stacey, about 11 years old at the time of the initial child support order in January 1996. The initial order required Robert to pay Robin $940 a month, based on gross income (including bonuses) to Robert of $10,953 per month and to Robin of $8,634 a month, and a time-share factor of 20 percent. Almost two years later, in December 1997, Robert filed an order to show cause seeking a reduction in support based on an increase in the time-share factor to 35 percent, and a possible increase to 40 percent if he also obtained more summer visitation time. Robert's income and expense declaration listed his gross average monthly income over the previous 12 months as $11,707 (calculated on dividing an annual income of $140,481 by 12). Less than two weeks later, also in December 1997, Robin filed her own order to show cause for modification of child support, seeking "guideline" support, and asserting that her average gross income for the past 12 months was $6,373 (though she did not list the *total* for the previous 12 months at the top of Judicial Council Forms, form 1285.50a, as Robert had done). Before the matter was scheduled for hearing in early April 1998, Robin filed another income and expense declaration showing an average monthly gross income of $8,031.

There was no hearing, though. The matter was handled in chambers. There was an extended conversation (as revealed by a subsequent letter to the trial judge) concerning Robert's "substantial bonus" and dividend and interest income. Robin's counsel submitted an order requiring Robert to pay Robin $836 a month plus 8 percent "of all earnings over and above the sum of $10,300 per month." That order was delivered to Robert's counsel, who

---

[1]All statutory references in this opinion unless otherwise expressly noted are to the Family Code.

then—apparently in accordance with "the standard procedure as discussed in chambers"—had 10 days to object. He did, in the subsequent letter to the trial judge, arguing that Robin's "version" of the order amounted to a "continuing modification of the child support order without any consideration of any increases" in Robin's own income. In May the trial court signed the order submitted by Robin's counsel, and Robert filed this appeal.

### The Child Support Order on Its Face Differs from the Formula Guideline

■ As this is, in effect, a judgment roll appeal, Robert is, of course, confined to errors which are "affirmatively shown by the record." (E.g., *People v. American Bankers Ins. Co.* (1989) 215 Cal.App.3d 1363, 1369 [264 Cal.Rptr. 152].) In most contexts showing any such error is extraordinarily hard to do, given that a challenge to the sufficiency of the evidence cannot be made.

However, perhaps because of the state's independent interest in having parents support their children (e.g., *In re Marriage of Lambe & Meehan* (1995) 37 Cal.App.4th 388, 392 [44 Cal.Rptr.2d 641] [parents cannot terminate court's ability to act on behalf of children]; *County of San Luis Obispo v. Nathaniel J.* (1996) 50 Cal.App.4th 842, 845-846 [57 Cal.Rptr.2d 843] [state's interest extends even to requiring support from parent who is victim of statutory rape]), perhaps because of the aspect of late 20th-century federalism in which federal welfare-reform law has wagged state substantive domestic relations law (see *In re Marriage of Fini, supra,* 26 Cal.App.4th at p. 1040, fn. 6 [nature of federal legislation giving rise to California's guideline formula]; cf. *Clark v. Superior Court* (1998) 62 Cal.App.4th 576, 578 [73 Cal.Rptr.2d 53] [noting bipartisan consensus in federal welfare reform efforts to require absent parents "to keep up their child support obligations"]), California's child support statutes are a legal world unto themselves. A rigid algebraic formula has been combined with the sua sponte obligation of the trial court to state on the record reasons whenever the actual support order differs from the guideline amount. As Justice Haning observed in *Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1452 [58 Cal.Rptr.2d 354]: "The information required by section 4056, subdivision (a) must be supplied sua sponte as part of the order or judgment." The statute tells us on its face that the articulation requirement is *required by federal law.*

We may begin with the proposition that no trial judge making a child support order can escape making a formula calculation pursuant to section

4055. The calculation is itself a tedious job, because it requires accurate assessments of each parent's taxable income (§§ 4055, subd. (b)(2), 4059, subd. (a)), and the time in which the higher earner of the two parents has primary physical responsibility for the children compared to the other parent (see § 4055, subds. (a) & (b)(1)(D)). The task is like doing someone else's tax returns. (See *In re Marriage of Fini, supra,* 26 Cal.App.4th at p. 1042; *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 528, fn. 12 [70 Cal.Rptr.2d 488].) No wonder one trial judge, for whom this court expressed great sympathy, was reluctant, when one variable in the equation was off by a mere 8 percent, to " 'rerun these dang things.' " (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144 [61 Cal.Rptr.2d 559].)

Yet the child support statutes permit no alternative. If the parties stipulate to a child support order, the trial court cannot approve an agreement "below the guideline formula" without certain declarations (§ 4065, subd. (a)), which implies that the court must first know what the guideline formula actually is. If the parties litigate, and the trial court exercises the discretion it *is* permitted (see § 4057, subd. (b)), the trial court must state on the record or in writing the guideline formula result and the reasons the court is making an order that differs from it. (§ 4056, subd. (a).) And, of course, if the court simply awards the guideline formula, it must make the calculation.[2]

The actual text of section 4055 would probably not be called the Legislature's most lucid work by anyone. It is, as we observed in *Clark v. Superior Court, supra,* 62 Cal.App.4th at page 583, a "glorified math problem." One doesn't so much read it as plug numbers into the basic equation. ("CS = K [HN − (H%)(TN)]"—There, we trust that's perfectly clear.) The statute virtually beckons the eyes to glaze over.

 Nevertheless, there are a few things that do manage to make themselves plain from the text, the primary one for purposes of the case before us is (as Robert's letter to the trial judge argued) that the formula does not admit one parent's income to be a fluctuating variable while the other parent's income is assumed to be static. The formula is always predicated on knowing what both parents' income is in nominal static dollars

---

[2]We can think of only one instance where a court might be spared the task of running the formula calculation. That would be a stipulated order so high on its face in comparison to each parent's gross income that a trial court, could, in effect, "eyeball" the numbers and thereby ascertain that the stipulated amount would exceed the guideline formula.

at the time the order is made.[3] The formula is incompatible with simple flat percentage figures, if only because the *percentage* of the combined parental income allocated to support varies with *nominal dollar amount* of the total net disposable income per month. (Or, to use the language of the statute, if TN < \$800, then K = .20 + TN/16,000, but if TN > \$10,000, then K = .12 + 800/TN. (See § 4055, subd. (b)(1)(E)(3).) What could be simpler?)[4]

## The Order Cannot Be Saved As an Exercise of Discretion

In a word, the order made by the trial judge here, in which the order fluctuates as a percentage of only one parent's income, is a result that differs from the formula guideline on its face. Now, of course, a court *can* differ from the guideline formula. Section 4057, subdivision (b) expressly permits the court to make an order where application of the guideline formula is "unjust or inappropriate in the particular case." But if the court is going to do that, it must comply with the requirement in section 4056 that any deviation from the formula amount be justified either in writing or on the record. Information required includes what the guideline formula is, the reasons for differing from the guideline, and the reason the amount is "consistent with the best interests of the children." (§ 4056, subd. (a)(1)-(3).)

In the present case, however, there was no statement of reasons, not even a DissoMaster printout. Thus given the facial noncompliance of the judgment with sections 4055 and 4056, the judgment must be reversed and remanded for further proceedings in conformity with those statutes. (*Rojas v. Mitchell, supra*, 50 Cal.App.4th at p. 1451 [reversible error to fail to give reasons for finding that support order which differed from guideline amount where appellate court could not "conclude that the missing information would necessarily have been adverse to appellant"]; *In re Marriage of Gigliotti* (1995) 33 Cal.App.4th 518, 526 [39 Cal.Rptr.2d 367] [reversible error to reduce order from guideline amount without requisite justification under § 4056].)[5]

---

[3]Which is not to say, of course, that the family court cannot make an order which accounts for the "seasonal or fluctuating income of either parent." It can. (See § 4064.) But such an order cannot be called the "guideline" amount pursuant to section 4055.

[4]In keeping with the tax return analogy, the underlying premise of section 4055 is that each parent's income is fixed at a point in time. Whether the Legislature might try to redo the formula to account for fluctuations in *both* parent's income over time hardly bears thinking about. What next? Quadratic equations?

[5]Noncompliance with section 4056 forces reversal. In the traditional language bearing on judgment roll appeals, the relief given (nonguideline support) differed from the requested relief made by Robin in her pleadings (guideline support).

*The Importance of Being Articulate When It Comes to the*
*Basis of Child Support Orders to Parents*

The matter must be remanded because of lack of compliance with the section 4056 requirement for a statement of reasons for differing from the guideline amount. Accordingly, a few comments on the statutory need for a statement of reasons are now apropos. (Cf. Code Civ. Proc., § 43 ["In giving its decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case."].)

This case appears to have followed the all-too-common pattern in family law of lawyers disappearing into a judge's chamber and emerging with the judge's order, independent of any hearing or settlement. Yet of all matters, child support orders—and particularly given the aura of occult wizardry surrounding the algebraic formula set forth in section 4055[6]—must be seen by each parent as the result of a fair and reasonable process, not an arbitrary decision done in a corner. In this regard, Justice King's remarks in *In re Marriage of Fini, supra,* 26 Cal.App.4th 1033, bear repeating, emphasizing as they do the relationship between the perception of fairness by the parents and the *legitimacy* of the justice system which produces the child support order: "We pride ourselves on a system of justice, especially in family law cases. In a just system, parents being ordered to pay or receive child support *deserve to know how the amount of the support was arrived at and that the process used is one that is fair and reasonable to both the payor and the payee.* This would not only make it more likely that the order will be complied with, but it would eliminate the amount ordered for child support as a source of ongoing conflict between the parents, the fallout from which is clearly harmful to the child. It is indeed unfortunate that the Legislature, in its efforts to micromanage child support, lost sight of how important it is that parents *understand and accept the fairness of the calculation.*" (*Id.* at p. 1041, italics added.)

Unfortunately, when lawyers and the judge disappear into .chambers and emerge with an order to confer on the parents, the impression created is not

---

[6]The identification of tax law with the occult is part of popular culture. There's a reason the comic strip character Cosmo Fishhawk has a tax lawyer who wears the dark blue robes with alchemic symbols and conical hat usually associated with sorcery. As any number of courts have already noted, the guideline formula has transformed child support law into a branch of tax accounting.

one of a "fair and reasonable" process. Rather, the impression is one of a decision that has been predetermined without a hearing.[7]

Not only is it important to the judiciary's legitimacy that parents understand the basis for child support orders, an important issue of substantive family law is also involved. As we have mentioned above, the child support statutes even today still allow for the exercise of discretion in making support orders. (§ 4057, subd. (b).) The potential for the exercise of discretion plays an important role in the statutory scheme, considered as a whole. Again, to quote *Fini*: "We join the courts in *County of Lake* [*v. Antoni* (1993) 18 Cal.App.4th 1102 [22 Cal.Rptr.2d 804]] and *Estevez* [*v. Superior Court (Salley)* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470]] by holding in this case that the court in child support proceedings, to the extent permitted by the child support statutes, must be permitted to exercise the broadest possible discretion in order to achieve equity and fairness in those most sensitive and emotional cases." (*In re Marriage of Fini, supra*, 26 Cal.App.4th at p. 1044.) However, when orders are strictly the products of unreported chambers conferences, there is no opportunity for the court to exercise its discretion, because any discretion, under the current statutory scheme, requires either a statement on the record or some kind of writing. In essence, making an order in an unreported chambers conference deprives the parents of their right under section 4057, subdivision (b) to have the family court at least *consider* whether the guideline result should be varied under the circumstances of their particular case.

Finally, the need for an explanation of the child support order is grounded in an important part of public policy from the point of view of the best interests of children. Section 4053, subdivision (e) declares that the formula guideline "seeks to place the interests of children as the *state's* top priority." (Italics added.) A logical corollary of this statute is that appellate courts must have enough information in the record to evaluate whether a court correctly followed the formula guideline (in most situations, unlike the present case, a

---

[7]As with all trial work, one must distinguish between contested factual issues that require an evidentiary hearing and issues on which there is no dispute. One of the reasons for the rigid formula guidelines was to "minimize the need for litigation" (§ 4053, subd. (j)), a goal with which no one can quibble. When the basic inputs to the formula guideline are undisputed, the lawyers themselves should be able to stipulate as to what the guideline amount would be, and then the only dispute might be over whether the case was an appropriate one for the exercise of trial court discretion to vary from the guideline. Our remarks are obviously not intended to discourage parties from predetermining basic essentials in any child support dispute. What they are intended to do is highlight the need for explanation by the trial court when any of the variables bearing on child support *are* disputed, or when one of the parties contends that the case is appropriate for variation with the guideline as a matter of trial court discretion.

deviation will not be apparent on the face of the order) or whether it abused its discretion in differing from it. While most appeals in this area are brought by payor parents who complain that they are being forced to pay too much, one need only reflect on the case where an error in the calculation of the guideline formula resulted in an order that was *too low* to appreciate the importance of appellate review to the implementation of the public policy. An adequate record on appeal is vital to the implementation of that policy.

### *Disposition*

The order is reversed, with instructions to remake the child support order in accordance with the principles set forth in this opinion. In the interests of justice each side will bear its own costs on appeal.

Bedsworth, J., and O'Leary, J., concurred.