Filed 7/1/22  Marriage of Lewis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| In re the Marriage of TALMADGE and JENNIFER LEWIS. | C094817 |
| TALMADGE LEWIS,<br><br>Respondent,<br><br>v.<br><br>JENNIFER LEWIS,<br><br>Appellant. | (Super. Ct. No. FLFL2000382) |

Appellant Jennifer Lewis (Mother) and Respondent Talmadge Lewis (Father) have two children.  In connection with the couple's divorce, the trial court ordered Father to pay child support to Mother, taking into consideration a $1,000-a-month benefit the couple had been receiving in connection with their adoption of their younger child, who has special needs.  On appeal, Mother challenges the trial court's order, arguing that (1) the monthly benefit is not "a permissible basis to deviate downward from a guideline child support calculation"; (2) the trial court deviated from the statutory guideline

1

calculation without making required findings; and (3) a "credit" to Father in the amount of one-third of the monthly benefit "is not permissible" under California child support statutes.

We conclude Mother's first two claims are unpersuasive because the credit to Father was not a deviation from the statutory guideline formula. We conclude Mother's third argument is forfeited on appeal.

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

During their marriage, Father and Mother had two children, A.L. and T.L. A.L., born in 2012, is the couple's biological daughter. T.L., born in 2018, was adopted by the couple.

In connection with T.L.'s adoption, the couple made an agreement with the Yuba County Health & Human Services Department, whereby the couple received $1,000 per month as "an adoption assistance benefit for [T.L.]," who "me[t] the definition of a special needs adoption" and therefore was eligible to receive a "federally funded subsidy" meant to "encourage the adoption of special needs children."

During divorce proceedings that began in 2020, Mother asked the trial court to order Father to pay basic child support, in addition to one-half of employment-related childcare costs, and one-half of all uninsured healthcare costs. In the first "income and expense declaration" that Mother filed in the trial court, she represented that she earned $6,270 per month in wages, and that her average monthly childcare expenses were $1,600, and that average monthly health care costs not paid by insurance amounted to $100. In his "income and expense declaration," Father represented that he earned $750 per week in wages. In November 2020, and pursuant to the parties' agreement, the trial court ordered Father to pay $850 per month to Mother "as a temporary order."

2

In April 2021, the parties filed pleadings regarding how, if at all, T.L.'s monthly adoption assistance payments should feature in the trial court's eventual child support order. Counsel for Father proposed "three ways in which the adoption assistance [payments]" could be "allocated" by the trial court. Counsel for Mother argued the "payments should not be included in the [c]ourt's determination of guideline child support."

In a July 2021 filing, the trial court ordered Father to pay: (1) monthly child support to Mother in the amount of $933; (2) half of all employment-related childcare costs; and (3) half of all reasonable uninsured healthcare costs for the children. Further, the trial court determined the adoption assistance payment was a "special circumstance[ ]" under Family Code section 4057, subdivision (b)(5) (statutory section citations that follow are to the Family Code), warranting an "adjustment downward from [the] guideline in the amount of $340/mo."

At an August 2021 hearing, counsel for Mother argued the trial court had erred by "deviat[ing] from guidelines support" and by failing adequately to provide "the reasons that the amount of support is consistent with the child's best interest."

On the merits, counsel for mother argued that a pleading counsel had filed earlier with the trial court "set forth a number of reasons" that courts "throughout the United States . . . have held that we do not look at" adoption assistance payments for special needs children "as income. We do not look at it as a reason to deviate from guidelines. . . . This is a federal benefit . . . of [T.L.], who is a special needs child . . . ." "I believe that the Arizona court under *Hamblen* [*v. Hamblen* (Ariz.Ct.App. 2002) 203 Ariz. 342] . . . got this . . . the most correct in terms of how to apply the adoption" assistance payments, counsel for Mother argued.

Counsel for Father argued the monthly adoption assistance payments be "allocat[ed] . . . somewhere in the formula," as the "guideline calculation is an incredibly large, complex formula that accounts for everything."

The trial court said that it "want[ed] to go through [the] points and authorities" filed by Mother's counsel. First, the trial court agreed with counsel for Mother that "the reasons for deviation need to be outlined on the record," and that—at least in part because there was no court reporter at an earlier hearing—the trial court would "review the order that was made and make an order that is clear for purposes of the record."

Next, the trial court explained that it "did not consider" the adoption assistance payment "as income." The trial court explained this was "demonstrated by" the child support calculation "that was attached to" court minutes, which "did not factor" the adoption assistance payments "into the number that was produced by the guideline calculation."

As for counsel's argument that "the [c]ourt should not offset the non-custodial parent's support obligation by the amount of the adoption subsidy," the trial court observed that Father made an "initial request . . . to offset the *entire* amount against the child support obligation," and that the trial court "declined to do that and . . . [was] not going to do that." (Italics added.) But because (a) "adoption assistance is intended to compensate the parents of the child for such things as child care and unreimbursed medical expenses," and because (b) Father "is responsible for those expenses *in addition to* the guideline child support, [the trial court] th[ought] that *some consideration* need[ed] to be taken in that regard." (Italics added.)

Accordingly, the trial court explained, it was vacating its previous order and adopting a new order to "credit . . . the amount of one-third of the needs," which was "$346."

Seeking to understand the trial court's ruling, Mother's counsel asked if the trial court was "allocating $346 of [T.L.'s] subsidy towards [F]ather's obligation [of] the one-half the amount of child-care." The trial court initially replied that Mother's counsel's understanding was "not correct," but then said: "Although on further reflection that

4

actually seems the more appropriate way to frame the order. So thank you for that input, [c]ounsel."

Mother's counsel replied: "[W]e . . . take issue with any deviation whatsoever. . . . Because we do believe very, very strongly that the . . . subsidy is not to be deviated from." A bit later, after asserting that Father was in "arrears" on child support payments and that there was "reason to believe that [Father's] income ha[d] substantially increased," Mother's counsel expressed "vehement objection to any kind of deviation from [the] guideline in a situation where we have a child with significant special needs."

The trial court responded: "[T]he [c]ourt is limited by the materials in the record. As such I am finding a basis under [Family Code section] 4057(b)(5) to make a deviation in the amount of one-third of [T.L.'s] adoption subsidy, which is $346. Other than that I will impose guidelines support."

Mother's counsel sought further clarification: "I just want to make sure that we are clear. So you are deviating from guideline support versus deviating from the—" The trial court interjected: "I misspoke. I apologize. . . . One-third of the amount of [T.L.'s] adoption subsidy will be credited against [T.L.'s] child care and/or medical costs unreimbursed by insurance because [F]ather is still liable for 50 percent of those costs."

Later, the trial court explained that, when "utilizing the figures" provided by the parties, "the amount of guideline support that return[ed] for [T.L.] [was] $636 per month," and the guideline support amount for A.L. was "$363 per month." The trial court made those amounts "retroactive to the date of filing of the petition" in July 2020.

In January 2022, and consistent with its statements at the August 2021 hearing, the trial court filed "findings and order after hearing" on a Judicial Council form, ordering Father to: (1) make monthly payments of $363 for A.L. and $636 for T.L.; (2) pay half of employment-related child-care costs; and (3) pay half of reasonable uninsured healthcare costs for the children. The form order further states that "[t]otal child support

5

per month" is "$999," and that Father is to "receive a $346 per month credit against his 50% share of [T.L.'s] child care or un-insured medical expenses."

Mother's motion to augment the record on appeal, filed on April 6, 2022, is granted.

DISCUSSION

I

*Background Legal Principles*

A.   Appellate Presumptions

We presume the trial court's order is correct and supported by substantial evidence. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Consistent with this presumption, we draw all inferences in favor of the judgment unless the record expressly contradicts them. (*Ibid*.) "The general rule is ' "that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]" [Citations.] This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed." ' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.)

B.   Trial Court Discretion

"The facts and circumstances of the parties in each family law case are different, which is why these cases are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity. It is for this reason that the author of the child support statute, later in the same legislative session in which it was adopted, ushered in another bill making clear 'that it was not the intention of the Legislature to eliminate family law judges' traditional discretionary authority to adjust child support orders in individual cases where fairness requires it.' [Citation.] This makes clear that the court, in child support cases, is not just supposed to punch numbers

6

into a computer and award the parties the computer's result without considering circumstances in a particular case which would make that order unjust or inequitable. [Citation.] Otherwise, there would be no need for a judge; all you would need would be a computer." (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 (*Fini*).) Thus, a trial court "in child support proceedings, *to the extent permitted by the child support statutes*, must be permitted to exercise the *broadest possible discretion* in order to achieve equity and fairness . . . ." (*Id.* at p. 1044, italics added; see *Greiner v. Keller* (2019) 36 Cal.App.5th 332, 339 [agreeing with this proposition stated in *Fini*].)

### C. Forfeiture

" 'For better or worse, California child support law now resembles determinate sentencing in the criminal law: The actual calculation required of the trial judge has been made so complicated [citation] that, to conserve judicial resources, any errors must be brought to the trial court's attention at the trial level while the [theoretical] error can still be expeditiously corrected. [Citation.]' " (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 37.)

"We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived. (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448; see also Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by 'argument and, if possible, by citation of authority'].)" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

### D. Standard of Review

"[C]hild support awards are reviewed for abuse of discretion. [Citations.] We observe, however, that the trial court has 'a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . .' [Citation.] Furthermore, 'in reviewing child support orders we must also recognize that

7

determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]' [Citation.] In short, the trial court's discretion is not so broad that it 'may ignore or contravene the purposes of the law regarding . . . child support. [Citations.]' [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282-283.)

"We are not called upon to determine whether we would have made [the challenged] award, but whether any judge could reasonably have done so." (*In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1366.) In other words, we ask whether the "order exceeds the bounds of reason." (*Ibid.*)

II

*Child Support Statutes*

A.    Section 4053

"In implementing the statewide uniform guideline, the courts shall adhere to the following principles: [¶] (a) A parent's first and principal obligation is to support the parent's minor children according to the parent's circumstances and station in life. [¶] (b) Both parents are mutually responsible for the support of their children. [¶] (c) The guideline takes into account each parent's actual income and level of responsibility for the children. [¶] (d) Each parent should pay for the support of the children according to the parent's ability. [¶] (e) The guideline seeks to place the interests of children as the state's top priority. [¶] (f) Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children. [¶] (g) Child support orders in cases in which both parents have high levels of responsibility for the children should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes. [¶] (h) The financial needs of the children should be met through private financial resources as much

8

as possible.  [¶]  (i) It is presumed that a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children.  [¶]  (j) The guideline seeks to encourage fair and efficient settlements of conflicts between parents and seeks to minimize the need for litigation.  [¶]  (k) *The guideline is intended to be presumptively correct* in all cases, and *only under special circumstances should child support orders fall below the child support mandated by the guideline formula.*  [¶]  (l) Child support orders shall ensure that children actually receive fair, timely, and sufficient support reflecting the state's high standard of living and high costs of raising children compared to other states."  (§ 4053, italics added.)

### B.     Section 4055

"The child support guideline is an algebraic formula set forth in section 4055" (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 527), the specifics of which are unnecessary to detail here.

### C.     Section 4056

Section 4056, subdivision (a) requires the trial court to "state, in writing or on the record, the following information whenever the court is ordering an amount for support that *differs from the statewide uniform guideline formula* amount under this article:  [¶] (1) The amount of support that would have been ordered under the guideline formula.  [¶] (2) The reasons the amount of support ordered differs from the guideline formula amount. [¶]  (3) The reasons the amount of support ordered is consistent with the best interests of the children."  (§ 4056, subd. (a), italics added.)

"The statutory findings are mandatory.  The failure to make them precludes effective appellate review and may constitute reversible error if the missing information is not otherwise discernible from the record."  (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183.)

9

D.    Section 4057

Section 4057, subdivision (a) provides:  "The amount of child support established by the formula provided in subdivision (a) of Section 4055 is presumed to be the correct amount of child support to be ordered."  Subdivision (b) of this section provides that this "presumption . . . is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that *application of the formula would be unjust or inappropriate in the particular case*, consistent with the principles set forth in Section 4053, because one or more of the following factors is found to be applicable by a preponderance of the evidence, and the court states in writing or on the record the information required in subdivision (a) of Section 4056."  (§ 4057, subd. (b).)

The fifth enumerated factor states:  "Application of the formula would be unjust or *inappropriate due to special circumstances* in the particular case.  These special circumstances *include*, *but are not limited to*, the following:  [¶]  (A) Cases in which the parents have different time-sharing arrangements for different children.  [¶]  (B) Cases in which both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent.  [¶]  (C) Cases in which the children have special medical or other needs that could require child support that would be greater than the formula amount.  [¶]  (D) Cases in which a child is found to have more than two parents."  (§ 4057, subd. (b)(5), italics added.)

"Just because a circumstance is not mentioned in section 4057 [subdivision (b)(5)] does not mean ipso facto that it does not merit reducing support from the guideline amount."  (*Wilson v. Shea* (2001) 87 Cal.App.4th 887, 898.)  "The 'special circumstances' exception of section 4057, subdivision (b)(5) gives the trial court 'considerable discretion to approach unique cases on an ad hoc basis.'  [Citations.]  The

10

trial court has 'broad discretion' to determine when special circumstances apply. [Citation.]" (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1049.)

      E.      <u>Sections 4061 and 4062</u>

"*In addition to basic child support established by the guideline formula* in section 4055, subdivision (a), a trial court must order certain *other* costs as additional support, including childcare costs related to employment, training, or education" (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 32, original italics omitted, italics added), and "reasonable uninsured health care costs for the children." (§ 4062, subd. (a)(1), (2).) "Among the family law bench and bar, these are usually referred to as mandatory . . . add-ons." (*Fini, supra,* 26 Cal.App.4th at p. 1039.)

"The language as to mandatory add-ons for employment-related child care and reasonable uninsured medical expenses in section 4062 is clearly qualified by the language in section 4061" (*Fini*, *supra*, 26 Cal.App.4th at p. 1039), which provides that "[t]the amounts in Section 4062 . . . shall be computed in accordance with the following: [¶] (a) If there needs to be an apportionment of expenses pursuant to Section 4062, the expenses shall be divided one-half to each parent, unless either parent requests a different apportionment pursuant to subdivision (b) and presents documentation which demonstrates that a different apportionment would be more appropriate. [¶] (b) If requested by either parent, and the [trial] court determines it is appropriate to apportion expenses under Section 4062 other than one-half to each parent, the apportionment shall be as follows: [¶] (1) The basic child support obligation shall first be computed using the formula set forth in subdivision (a) of Section 4055, as adjusted for any appropriate rebuttal factors in subdivision (b) of Section 4057." (§ 4061, subds. (a), (b)(1).)

## III

### *Analysis*

#### A.   Required Findings

Mother argues on appeal that the trial court "deviated from the guideline without making the required findings" under section 4056. Father did not file a respondent's brief.

Mother's contention lacks merit, because section 4056 findings are required only when the trial court "order[s] an amount for support that differs from the statewide uniform *guideline formula* amount." (§ 4056, subd. (a), italics added.) Here, the trial court did not order an amount for support that differed from the guideline formula; as Mother concedes, "the trial court accurately calculated the guideline" amount of $999 in basic child support.

The $346 credit to Father concerned the *mandatory add-ons* under section 4062 that Father also was ordered to pay. That was an "apportion[ment] [of] expenses under Section 4062 other than one-half to each parent," pursuant to section 4061, subdivision (b).

For the same reasons, suggestions in Mother's appellate argument that the trial court somehow improperly "deviate[d] downward from a guideline child support calculation" is unavailing (though understandable, as the trial court itself initially characterized its ruling as a "deviation").

#### B.   The Credit

Mother further argues that "the amount of one-third of T.L.'s . . . [a]doption [s]ubsidy is not permissible under . . . section 4061."

This contention is forfeited on appeal, as Mother did not raise it in the trial court. (*See In re Marriage of Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 37.) Mother objected to the trial court's consideration of the adoption assistance payment, per

12

se, in ordering a "credit" to Father; she did not object to the trial court's *calculation* of the *amount* of the credit.

This contention, as we will explain, is also forfeited due to the absence of cogent legal argument by Mother (see *In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830).

Mother argues that, pursuant to section 4061, "[t]here are four initial requirements which must be satisfied before a [trial] court apportions child support addons beyond one half to each party," which are: " 'If there [1] needs to be an apportionment of expenses pursuant to Section 4062, [2] the expenses shall be divided one-half to each parent, [3] unless either parent requests a different apportionment pursuant to subdivision (b) and [4] presents documentation which demonstrates that a different apportionment would be more appropriate.' (§ 4061 (a).)"

Here, Mother argues, "the trial court only complied with the first two of these requirements," as "[3] . . . issuing a credit to [Father] of one-third of T.L.'s adoption subsidy is unsupported as neither party made any request for an alternate apportionment of the addons," and "[4] [n]either party presented any documentation to demonstrate why the addons should be apportioned in a different manner."

We disagree. The trial court did not err in construing Father's stated position vis-à-vis the assistance payments as "requests [for] a different apportionment" of the mandatory add-ons. (§ 4061, subd. (a).) In his briefing, Father argued the "adoption assistance [payments]" should be "allocated" by the trial court in some fashion. And at the August 2021 hearing, Father argued the assistance payments be "allocat[ed] . . . somewhere in the formula," as the "guideline calculation is an incredibly large, complex formula that accounts for everything."

And the trial court also did not err in determining that the written agreement between Mother, Father, and the Yuba County Health & Human Services Department (a copy of which Mother provided as an exhibit in support of her briefing concerning the

13

monthly assistance payments) was "documentation which demonstrate[d] that a different apportionment" of mandatory add-ons "would be more appropriate." (§ 4061, subd. (a).)

Thus, the trial court complied with all four of section 4061, subdivision (a)'s "initial requirements" that Mother identifies.

So the reason Mother's argument—that "the amount of one-third of T.L.'s . . . [a]doption [s]ubsidy is not permissible under . . . section 4061"—is forfeited due to the absence of cogent legal argument is that Mother *declines* to "reach that analysis" in her appellate briefing in light of her (mistaken) observation that the trial court erred regarding the third and fourth "initial requirements."

In any event, on the merits, we conclude the trial court did not abuse its discretion in concluding that T.L.'s $1,000 monthly adoption assistance payment made it "appropriate to apportion expenses under Section 4062 other than one-half to each parent." (§ 4061, subd. (b).) That ruling did not exceed the bounds of reason. (*In re Marriage of De Guigne*, *supra*, 97 Cal.App.4th at p. 1366; cf. *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1158 ["in suitable circumstances, the trial court may adjust parental support obligations in light of a child's independent income"].)

We observe that, while the trial court invoked section 4057, subdivision (b)(5) ("special circumstances" warranting deviation from the guideline formula) when making this determination, section 4061, subdivision (b) does *not* expressly limit a trial court's discretion in "determin[ing] it is appropriate to apportion" mandatory add-ons "other than one-half to each parent" to the factors contemplated in section 4057.

## C.    Mother's Other Arguments

Because we conclude the trial court did not err under California law, we need not address Mother's arguments (1) invoking out-of-state case law on the question "[w]hether an [a]doption [s]ubsidy may be . . . considered/utilized . . . in crafting a

14

supporting order," (2) that the (non)error was prejudicial, and (3) regarding instructions to the trial court on remand.

## DISPOSITION

The judgment (order) is affirmed. Costs of appeal are awarded to respondent. (Cal. Rules of Court, rule 8.278(a).)

                                  _____

                                  HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

KRAUSE, J.

15