OPINION
Loren J. Prostano (Prostano) appeals from a postjudgment of dissolution of marriage order of modification of child support for the son of the parties born in September 1990. The principal issue on appeal is whether the trial court erred in treating the travel expenses of the father (Gigliotti) to Massachusetts to visit with the parties' son as a deduction from the amount of child support mandated by the statutory guideline formula. *Page 521 
 FACTS
The parties were married in 1990 and separated about 17 months later in mid-1991; they had a son, Michael, born September 22, 1990. Prostano filed a petition for dissolution of marriage in July 1991; trial was held in June 1992; Prostano requested permission of the court to move with Michael to Massachusetts, and permission was granted; Prostano and Michael moved to Massachusetts in September 1992.
With respect to child custody and support, the judgment provided as follows: the parties were to have joint legal and physical custody of Michael; Prostano was to have primary physical custody and Gigliotti was to have secondary physical custody; Prostano had the right to move out of the state of California with Michael; after Prostano relocated, Gigliotti was to have the right to custody of Michael for up to three days per month in the area where Prostano resides, increasing to four days after Michael reaches age three, five days after Michael reaches age four, and six days after he reaches age five.
In addition, the court ordered that Prostano bring or cause Michael to be brought to Los Angeles to visit with Gigliotti once every three months for a five-day period; when Michael reached age five, Prostano can send him by air, unaccompanied by an adult, for the quarterly visits. The judgment also provided for custodial periods during the summers and vacations, which provisions are not at issue on this appeal.
As child support, beginning June 24, 1992, until Prostano relocated, Gigliotti was to pay Prostano $400 per month; after Prostano relocated, Gigliotti was to pay to Prostano "the sum of $400 per month, payable $133.33 directly to [Prostano] on the first day of each month and $266.67 into a travel trust fund for [Gigliotti's] use for visiting with the child. [Gigliotti] shall set up an account for said travel trust fund, shall deposit the funds therein on a timely basis and shall provide an accounting on or before March 15th and September 15th of each year of all deposits and disbursements and shall pay to [Prostano] by September 15th any funds not used by him during the prior 12 month period for travel expenses. . . . [Gigliotti] shall be entitled to spend from the travel trust the sum of $3,200 per year for visiting with the minor child in the manner provided in this Judgment. . . . [Prostano] shall not have the right to use said trust funds for her own travel expenses. The court reserves jurisdiction to resolve any disputes which arise concerning the use of the travel trust funds."
The judgment further stated that the child support order therein was based on Gigliotti having a gross monthly income as of June 24, 1992, of $3,500 *Page 522 
and a net monthly income, after taxes and FICA, of $2,410; and Prostano having a gross monthly income of $3,000 and a net monthly income of $2,365 after taxes and FICA. Prostano's income was "based on her expected earnings when she commences full-time employment [in Massachusetts]."
In April 1993, Prostano filed in a court in Massachusetts a complaint for modification of the child support provisions of the judgment of dissolution; therein she alleged that the job in Massachusetts for $35,000 per year, anticipated in the judgment, "was not forthcoming"; she currently was employed in another job paying $30,000 per year which did not have the scheduling flexibility permitting her to travel to California for Gigliotti's mandatory quarterly visits with Michael for five-day periods; in addition, because her sister-in-law, who had been providing child care for Michael free of charge, would be less available in the summer of 1993, she will incur additional expenses for child care so that she could continue to work at her present job. Prostano sought modification to increase child support payments and to eliminate her mandatory quarterly travel to California with Michael, or in the alternative to make appropriate financial arrangements for two annual visits to California instead of the four quarterly visits.
In June 1993, Gigliotti filed in the superior court an order to show cause for modification of visitation, seeking to make more specific the provisions for the quarterly visits and his telephone contacts with Michael, allegedly because of disputes between the parties because of Prostano's "lack of communication and cooperation with regard to Michael." In June 1993, Gigliotti also filed in the Massachusetts case a motion to dismiss Prostano's complaint.
In July 1993, the Massachusetts court stayed Prostano's action in Massachusetts until the California superior court determined whether to accept or decline jurisdiction as to the child support issues raised by Prostano; the Massachusetts court also ordered that Prostano file a motion to dismiss Gigliotti's claim for modification in the California case, which she did.
After hearing on Prostano's motion to quash and dismiss Gigliotti's order to show cause for modification, the superior court ordered on October 6, 1993, that the "Case will be heard in California, and the Court has not declined to hear the support issue."
The matters came on for hearing on January 4, 1994. Prostano had filed an income and expense declaration indicating that with a gross monthly income of $2,500, her net monthly disposable income was $1,809.49; each month she paid $800 for rent and $980 for child care at a Montessori School, which *Page 523 
two expenses alone exceeded her disposable income. She argued that her financial circumstances had materially changed since the entry of the judgment of dissolution, she was earning less money than anticipated in the judgment, her job hours were less flexible, and she was required to pay for two round-trip air flights with respect to the quarterly California visits because she needed to return to work in Massachusetts during the week that Michael visited with his father in California. She also had housing and child care expenses which she did not have in 1992. Prostano also argued that the court's travel orders worked a hardship because she was required to spend $4,800 per year to bring Michael to California for his visitation with his father; she also argued that "By making the travel trust a reduction in the child support I receive, rather than dealing with it as an `add-on' in accordance with the California Child Support statute, I pay an additional $3,200 per year to be used at respondent's whim."
According to Prostano, Gigliotti had not spent his own money to come to Massachusetts to visit with Michael, and had only visited with Michael in Massachusetts four times in the past year, despite the fact that he had the right to visit him in Massachusetts once a month; according to Prostano, Gigliotti spent 55 percent of the travel trust on "luxury lodgings" and items other than plane fare; the travel trust would have permitted Gigliotti to make eight round trips to Massachusetts at an average of $400 per round trip.
According to Gigliotti's income and expense declaration, his gross monthly income was $3,833, with a net monthly disposable income of $2,725. He claimed total monthly expenses of $2,951, also in excess of his disposable income; however, he claimed $266 for travel expenses for visitation, which apparently reflected the amount he was ordered to deposit into the travel trust, and which he used to reimburse himself for his travel to Massachusetts for visitation with Michael.[1]
In connection with his order to show cause, Gigliotti also challenged Prostano's expense of $980 for child care as excessive and submitted fees for other area preschools and day-care centers which were less that $980. According to Prostano's responsive declaration, "Gigliotti has visited none of [the other schools]," and had no personal knowledge whatsoever of those facilities. She claimed that the other, cheaper facilities were "less appropriate and satisfactory school/child care," and that some were in "high-crime areas which I would not drive through, much less leave my child in." *Page 524 
At the hearing on January 4, 1994, the court made the following order: "The quarterly visits are going to be extended to a week in duration from Saturday to Saturday. I'm not extending it to Sundays, except at the mother's sole election. If she wants to come out here on Saturday and stick around here for a while, that's her business. [¶] Mother is going to continue to pay for her costs of transportation. [¶] The child support is modified pursuant to the child support guideline. . . . Based on the following: 5 percent visitation, married filing jointly status — this is all for [Gigliotti] — two exemptions, $3,833 gross income. . . . [¶] $2,500 for the petitioner head-of-household status, two exemptions, $147 for health insurance that she incurs for the child. [¶] The court has reviewed carefully the declaration of the respondent concerning his investigations into child care opportunities and is reasonably persuaded for a couple of reasons, that the $980 that petitioner actually spends to send this child to this Montessori with extended day care is higher than it reasonably needs to be. [¶] I think that the law, as opposed to wisdom, says that you get to have child care expenses. Now, wisdom may say that parents should do whatever they can do to see that their kids [get] the best education and training possible. And it may very well be that this [Montessori] school is exactly where this child ought to be. . . . [¶] And having reviewed the declaration and the multitude of alternative resources available, the court has decided that the reasonable level of child care expenses is $750 and will base its support on $750. The respondent's share will be $375. [¶] The child support is $717. Total of $1,092. The respondent is ordered to pay the sum of $1,092 per month as child support."
The court made the foregoing provisions retroactive to December 1, 1993, and also denied Gigliotti's requests for longer periods of visitation and that Prostano bear the cost of the quarterly visits after Michael reaches age five. The trial court also expressly stated that the travel trust provisions of the judgment were to remain in effect.
As the parties interpret the trial court's order, which interpretation appears to us to be correct, Gigliotti is entitled to deposit into his travel trust the amount of $266.67 per month, or $3,200 per year, which is deducted from the amount of child support otherwise payable to Prostano. In other words, the net amount of child support which Gigliotti is to pay to Prostano pursuant to the January 4, 1994, order is $825.33 per month ($1,092-$266.67). Prostano filed timely notice of appeal from the order. Her principal contention on appeal is that "The trial court erred in treating travel *Page 525 
expense as a deduction from child support rather than as a mandatory add-on as required by statute."[2]
 I MANDATORY GUIDELINE FOR CHILD SUPPORT (1) We apply the law in effect at the time the trial court made its ruling. (County of San Diego v. Guy C. (1994)30 Cal.App.4th 1325, 1331 [36 Cal.Rptr.2d 222].) Thus, this appeal is governed by the new Family Code provisions, which, inter alia, adopt a statewide uniform guideline for determining child support orders (see Fam. Code, § 4055), operative January 1, 1994.
"The establishment of the statewide uniform guideline constitutes a change of circumstances." (Fam. Code, § 4069) "There is a rebuttable presumption affecting the burden of proof that the amount of child support established by the guideline formula is the correct amount of child support to be ordered. (Fam. Code, § 4057, subds. (a), (b); former Civ. Code, § 4721, subd. (d).) This presumption `may be rebutted by admissible evidence *Page 526 
showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053, because one or more of the following factors is found to be applicable by a preponderance of the evidence, and the court states in writing or on the record the information required in subdivision (a) of Section 4056 . . .'" (Estevez v. Superior Court (1994) 22 Cal.App.4th 423, 430 [27 Cal.Rptr.2d 470].)
In the instant case, the January 4, 1994, order must be reversed because the court in fact reduced the statewide uniform guideline amount of $717 by $266.67 without complying with the provisions of subdivision (a) of Family Code section 4056, which require that when the court orders an amount for child support that differs from the guideline amount, the court "shall state, in writing or on the record, the following information . . .: [¶] (1) The amount of support that would have been ordered under the guideline formula. [¶] (2) The reasons the amount of support ordered differs from the guideline formula amount. [¶] (3) The reasons the amount of support ordered is consistent with the best interests of the children."
While the court acknowledged that the guideline amount was $717, the court did not justify the deduction of the amount of $266.67 from the guideline amount with appropriate findings pursuant to Family Code section 4056
Moreover we reject Gigliotti's claim that "special circumstances exist in the instant case to warrant the establishment and maintenance of the travel trust as a deduction from child support." No such special circumstances were found by the trial court, either expressly or by implication from this record.
Pursuant to Family Code section 4052, "The court shall adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances set forth in this article." Pursuant to Family Code section 4057, subdivision (b), the presumption that the guideline formula amount is the correct amount of child support to be ordered may be rebutted by "admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case . . . because one or more of the following factors is found to be applicable by a preponderance of the evidence, and the court states in writing or on the record the information required in subdivision (a) of Section 4056: [¶] . . . [¶] (5) Application of the formula would be unjust or inappropriate due to special circumstances in the particular case. These special circumstances include, but are not limited to, the following: [¶] (A) Cases in which the parents have different time-sharing arrangements for different children. [¶] (B) Cases in which both *Page 527 
parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent. [¶] (C) Cases in which the children have special medical or other needs that could require child support that would be greater than the formula amount."
None of the foregoing factors were found by the trial court in the instant case, and the trial court made no finding that any other factor rendered the statutory guideline unjust or inappropriate. Gigliotti's brief suggests that because it was appellant who moved away with Michael, it is just and appropriate to reduce Michael's level of child support because of respondent's increased costs in connection with visitation, regardless of the parties' incomes. By this logic, the child's level of support with the primary custodial parent is being reduced for no reason other than the fact that, with the court's permission and implied finding that such move was in the child's best interest, the child's primary residence was moved a substantial distance from Gigliotti's residence. Gigliotti cites no provision in the Family Code which permits a reduction in child support for that reason alone, and we perceive no equity or logic in such a result in this case.
We also cannot uphold the trial court's order on the theory, asserted by respondent, that there were no changed circumstances justifying modification of the judgment. The claim is legally and factually incorrect. Family Code section 4069 states that the establishment of the statewide uniform guideline constitutes a change in circumstances. As a factual matter, numerous changed circumstances existed in this case, including an increase in Gigliotti's income, a decrease in Prostano's anticipated income, and increased housing and child care expenses incurred by Prostano. The trial court obviously found changed circumstances because it awarded an add-on for child care. For all of the foregoing reasons, the trial court's reduction of the guideline amount of child support by $266.67 constituted error.
 II TRAVEL EXPENSES FOR VISITATION (2) We also agree with Prostano's claim that the January 4, 1994, order is erroneous with respect to its treatment of travel expenses for visitation. As noted by Prostano, travel expenses for visitation are treated by Family Code section 4062, subdivision (b), as a discretionary "add-on" to child support, and there is no provision in the code for a deduction or "take-off" from the guideline amount for the expenses in section4062
Family Code section 4062 provides in pertinent part: "(a) The court shall order the following as additional child support: [¶] (1) Child care costs *Page 528 
related to employment or to reasonably necessary education or training for employment skills. [¶] (2) The reasonable uninsured health care costs for the children. . . . [¶] (b) The court may
order the following as additional child support: [¶] (1) Costs related to the educational or other special needs of the children. [¶] (2) Travel expenses for visitation." (Italics added.)
"`It is a well established rule of statutory construction that the word "shall" connotes mandatory action and "may" connotes discretionary action.' [Citation.] Thus, section 4062 mandates . . . additional child support for employment-related child care costs and reasonable uninsured health care costs, while it makes discretionary . . . additional child support for educational or special needs of a child or for travel expenses for visitation. Among the family law bench and bar, these are usually referred to as mandatory or discretionary add-ons." (In re Marriage of Fini
(1994) 26 Cal.App.4th 1033, 1039 [31 Cal.Rptr.2d 749].)
In this case, it is clear that until Michael reaches age five in September of 1995, appellant is obligated to accompany him on the plane to California for his quarterly visits with Gigliotti, each visit lasting about a week. Because of Prostano's job responsibilities in Massachusetts during the period of Michael's visit, she must make two round trips in connection with each visit, resulting in eight round trips per year. While Gigliotti was entitled to visit Michael in Massachusetts once a month, in the period since entry of the judgment, he had made only four such trips, and had paid for such trips with the amount in the travel trust established by the judgment. Under these circumstances, the amounts incurred by Prostano so thatGigliotti can enjoy visitation with Michael in California should be considered by the trial court as discretionary add-ons. It is clear that the trial court in the instant case failed to acknowledge its discretion in this regard, so on remand, the trial court will have an opportunity properly to apply Family Code section 4062 to the facts in this record.
As stated by one court under different circumstances than those presented here: "The statutory language concerning additional child support in the discretion of the court for travel expenses for visitation is confusing, because such expenses are usually incurred by the noncustodial parent who is paying child support. Under these circumstances, it is a misnomer to call it additional child support or an add-on, since incurring the financial burden of this expense usually will result in some reduction of the child support otherwise ordered. In this sense, although semantically peculiar, it might more properly be called a negative add-on." (In re Marriage of Fini, supra,
26 Cal.App.4th at p. 1039, fn. 5.)
To the extent that the court in Fini interpreted Family Code section 4062 to permit a reduction of the guideline amount of child support, or what it *Page 529 
denominated a "negative add-on," because of travel expenses for visitation incurred by the parent paying child support, we find no such authority therein or elsewhere in the code. In fact the language of subdivisions (b)(1) and (b)(2) of section 4061
appears to authorize only additions to the guideline formula amount because of expenses set out in section 4062
In any event, this case is not the usual one described inFini, because appellant, the custodial parent who was receiving child support, was in fact the parent who incurred the greater
amount of travel expenses for visitation. According to our record, Gigliotti incurred about $3,200 per year in travel expenses for visitation, while Prostano incurred about $4,800 in yearly travel expenses because the court placed upon her the obligation to bring Michael to California for Gigliotti's quarterly visits with him. Thus, this case does not present the situation envisioned in Fini where the noncustodial parent paying child support is also the parent bearing all of the financial expenses of visitation. Thus, even under Fini, there is no basis here for a reduction in the guideline formula amount of child support for Gigliotti's travel expenses for visitation.
We conclude that the trial court lacked authority to reduce the guideline amount of child support due to Gigliotti's travel expenses, and failed to exercise its discretion under Family Code section 4062, subdivision (b)(2), with respect to an add-on forProstano's and Michael's travel expenses, incurred so that Gigliotti could enjoy visitation with Michael.
Prostano requests that we modify the order to add on to the basic child support amount of $717, the amounts of $375 for mandatory child care expenses and $333.50, representing one-half the total visitation travel expenses incurred by Prostano. As the issue of an add-on for travel expenses is properly subject to the exercise of the trial court's discretion in the first instance, we believe the appropriate disposition is to reverse that part of the order dealing with travel expenses with directions that the trial court address the issue of an add-on for travel expenses consistent with the views expressed herein.
In light of our disposition, we necessarily find to be without merit Gigliotti's request for sanctions on appeal.
 DISPOSITION
That part of the order of January 4, 1994, establishing $717 as the amount of child support under the statewide guideline formula and $375 for child care expenses is affirmed; in all other respects the child support provisions *Page 530 
of the order of January 4, 1994, are reversed and the cause is remanded to the trial court for redetermination of the issue of add-ons to child support payable to Prostano consistent with the views expressed herein. Prostano is entitled to her costs on appeal.
Johnson, J., and Woods (Fred), J., concurred.
[1] By the time of the January 1994 hearing, Gigliotti had remarried and his spouse's gross monthly income was listed on his income and expense declaration as $1,800. At the time of hearing, the court stated that under the new Family Code provisions, "I don't get to consider new spouse income," and ordered that respondent "Cross the $1800 off of those because it's no longer accurate."
[2] Not challenged by any party to this appeal is the trial court's determination that $717 was Gigliotti's basic child support obligation under the statewide uniform guideline formula. There is also no challenge to the $375 add-on for child care expenses, in which the trial court first determined what it believed a reasonable expense should be, and divided that amount 50-50 between the parties. Family Code section 4062, subdivision (a), provides that "The court shall order the following as additional child support: [¶] (1) Child care costs related to employment or to reasonably necessary education or training for employment skills." The statute does not require that the child care costs be "reasonable" as opposed to actual. The word "reasonably" modifies the phrase "necessary education or training for employment skills," and appears to refer to the education or training of the parent, not the child. Although we question the trial court's interpretation of subdivision (a)(1) of Family Code section 4062 as authorizing the court to fashion a "reasonable" expense which does not correlate to the actual expense borne by the parent, we have no occasion to resolve this issue here. We do point out, however, that Family Code section 4061 provides that if there is to be an apportionment of expenses pursuant to section 4062, ". . . the expenses shall be divided one-half to each parent unless either parent requests a different apportionment pursuant to subdivision (b) and presents documentation which demonstrates that a different apportionment would be more appropriate." (Fam. Code, § 4061, subd. (a).) Under subdivision (b) of section 4061, the court has discretion to apportion such expenses other than one-half to each parent, but if it does so, the court must follow the provisions of subdivision (b); subdivision (b)(1) requires that the trial court is to first compute the basic child support obligation "using the formula set forth in subdivision (a) of Section 4055, as adjusted for any appropriate rebuttal factors in subdivision (b) of Section 4057" Then, under subdivision (b)(2), any additional
child support "required for expenses pursuant to Section 4062
shall thereafter be ordered to be paid by the parents in proportion to their net disposable incomes as adjusted pursuant to subdivisions (c) and (d)."
There is no evidence the trial court proceeded in the foregoing manner in awarding the add-on for child care costs. However, as this add-on is not at issue here, we set it aside in analyzing the remaining elements of the support order. *Page 531