Filed 10/18/13  Marriage of Howell CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| In re the Marriage of PATTI HOWELL and DOUGLAS HOWELL. _____ PATTI HOWELL,      Appellant,      v. DOUGLAS HOWELL,      Respondent. | B241152 (Los Angeles County Super. Ct. No. BD404294) |


APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge.  Affirmed.

Trope and Trope, Thomas Paine Dunlap and Brian P. Lepak for Appellant.

Wasser, Cooperman & Carter, Laura A. Wasser, Samantha Klein; and Edward J. Horowitz for Respondent.

Patti Howell (wife) appeals a postjudgment order pertaining to the spousal support and child support obligations of Douglas Howell (husband).

We perceive no abuse of discretion and affirm the trial court's order in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a 14-year marriage, the parties separated in 2004. There are two children of the marriage, Morgan (born 1993) and Madison (born January 1996). Morgan turned 18 and graduated from high school in 2011, prior to the filing of the subject order to show cause.

Wife filed for dissolution in 2004, and a judgment as to status only was entered on July 2, 2008.

1. *The 2009 stipulated judgment.*

In 2009, the parties stipulated to a judgment on reserved issues.

With respect to spousal support, the stipulated judgment ordered husband to pay wife the sum of $8,000 per month, to continue until June 15, 2014, "or the first to occur of the following terminating events: either party's death, [wife's] remarriage, or further order of the Court." The duration of spousal support was nonmodifiable unless, prior to June 15, 2014, wife were to file a motion showing good cause to modify the amount or duration of support.

The stipulated judgment provided the amount of spousal support and child support were computed based upon, inter alia, the following factors: husband's base gross annual income of $525,000 and wife's imputed gross annual income of $65,000; custodial timeshare to husband of 42 percent; and child support "add-ons totaling $5,600, of which $3,600 is for travel expenses associated with [husband's] exercising his custodial rights[1]and $2,000 for private school tuition for the parties' children, for which [husband] shall be solely and wholly liable without right of reimbursement."

---

[1] Husband travels frequently from Chicago to Los Angeles to exercise visitation. His physical custody includes three weekends per month.

2

The stipulated judgment included a recital of the parties' conflicting positions as to whether the spousal support order met the marital standard of living: "[Wife] contends that the spousal support order does not meet the parties' marital standard of living. [Husband] contends that the spousal support order exceeds the marital standard of living. No finding is made as to whether the order for spousal support provided in the Stipulated Further Judgment does or does not meet the marital standard of living. In any future proceeding for modification or termination of spousal support, each party shall be entitled to present evidence of what he or she contends to have been the marital standard of living."

The stipulated judgment included a *Gavron* warning (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705), advising wife "it is the goal of the *California Family Code* that she become self-supporting within a reasonable period of time."

With respect to child support, the 2009 stipulated judgment provided for *base* child support of $2,000 per month for each of the two minor children, as well as *additional* child support consisting of 11 percent of any cash bonus awarded to husband by his employer (5.50% attributable to each of the children).[2]

In addition, the stipulated judgment requires husband: to maintain health insurance for the minor children; to pay one-half of all mutually agreed-upon uninsured or nonreimbursed medical, dental and other specified care needs; and to pay $2,000 per month for private school tuition for the two children, for which husband was solely responsible.[3]

---

[2]  For example, in March 2010, husband was awarded a $525,000 cash bonus by his employer. In March 2011, he was awarded a $600,000 cash bonus. The 2011 bonus resulted in an additional $33,000 in child support for Madison, the equivalent of an additional $2,750 per month.

[3]  The record reflects Madison's private school tuition is $975 per month.

2. *Wife's request to modify child and spousal support.*

In November 2011, wife filed an order to show cause to modify child support and spousal support; she filed an amended order to show cause the following month. By this time, Madison was the only minor child. The 2011 order to show cause is the subject of this appeal.

Wife requested that spousal support of $8,000 per month be increased to "an amount of spousal support which is sufficient for [wife] to maintain the marital standard of living, which was approximately $29,876 per month . . . Said amount of spousal support takes into consideration sums necessary to pay taxes on that spousal support, but should be reduced by child support ordered."

With respect to child support, wife requested a modification to "guideline, using all of [husband's] total income."

Wife's supporting declaration stated, inter alia: Husband's base salary had increased by at least $75,000 per year and total compensation had increased by $388,000 per year since the time judgment was entered. She was unable to earn the $65,000 income that was imputed to her. She had lost half of her child support since June 2011, although her expenses had not been reduced by 50 percent since that time. Her interest-only loan on her residence had converted to a principal and interest loan, increasing her housing expense by $1,200 per month. She was unable to refinance her loan due to her insufficient income and the fact her spousal support was scheduled to terminate in 2014.[4]

---

[4]    Wife asserts she requires increased support in order to meet her housing expenses. However, the record reflects that following separation, wife purchased a $1.5 million house which she then had extensively remodeled, and the house is encumbered by a $900,000 mortgage. Husband properly argues that wife's alleged financial woes are of her own making.

4

3. *Husband's response to wife's modification request.*

Husband's papers showed his salary was $50,000 per month or $600,000 per year. In addition, he received discretionary bonus income which amounted to $600,000 in 2011.

With respect to child support, husband's position was that he should pay guideline support on his *base* salary, which would result in a monthly child support payment of $779 for Madison under the DissoMaster. In addition, husband agreed he should continue to pay 5.5 percent of any bonus income as additional child support (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33), which would amount to an additional $33,000 for 2011.

As for spousal support, husband disputed wife's contention that her marital standard of living was $29,876 per month. Husband asserted that during the marriage, his monthly gross income did not exceed $25,750 until the final 10 months of the marriage. Husband argued "it defies reason" that wife would have stipulated to monthly spousal support of $8,000 if her actual marital lifestyle was $22,000 more. According to husband, for "most of the marriage, they lived in the Midwest, did not own a second home, took reasonably priced family vacations, and did not purchase expensive cars or jewelry."

As for wife's contention that she should no longer be imputed income of $65,000 per year, husband relied on the 2008 vocational examination which concluded wife was readily employable and within a few years should have been able to earn a salary averaging $67,750 per year. Husband asserted that when wife previously appeared in court in 2008, she was involved in the same fledgling business operation, Health-E-Tips, which continued to lose money year after year. Instead of pursuing that venture, wife should have heeded the trial court's *Gavron* warning in 2009 that she needed to pursue gainful employment in order to become self sufficient.[5]

---

[5]     Husband's papers also showed he is paying $5,000 per month to support Madison's older sister, who is attending USC.

5

4. *Trial court's ruling.*

On January 23, 2012, the matter came on for hearing. Thereafter, the trial court ruled as follows:

Wife's request for an increase in child support for Madison was denied. Husband's request for a downward modification of child support was granted, retroactive to November 18, 2011. Commencing November 18, 2011, child support for Madison was reduced to $781 per month.

As and for additional child support of Madison, husband was directed to continue paying wife 5.5 percent of his cash bonus, pursuant to *Ostler/Smith*.

"Support for Madison shall continue until she reaches the age of majority, dies, marries, becomes fully self supporting or emancipated, or until further order of the Court, whichever first occurs. Pursuant to California Family Code §3901, child support shall continue, as set forth herein, if Madison has attained the age of 18 and is a full time-high school student who is not self supporting, until such time as Madison completes the 12th grade, or attains the age of 19, whichever first occurs."

With respect to calculation of guideline child support, the trial court found as follows:

Husband's monthly income available for support is $50,000. The trial court "decline[d] to add back perquisites allegedly received by [husband]."

The trial court determined it was appropriate to continue to impute income to wife in the amount of $65,000 per year, or $5,417 per month. "The Court finds that no legitimate reason has been given by [wife] as to why she is not gainfully employed at this time. [¶] c. The Court further finds that [wife] has failed to present any competent, admissible evidence indicating that the vocational analysis conducted by Paulette Hunnewell in 2008 should be disregarded by the Court. The Court finds that it is not necessary to undergo an entirely new analysis of [wife's] ability to obtain a job, the job market, and the like. The Court finds that it is [wife's] obligation to show that the previously undertaken analysis of the vocational skills and opportunities upon which the

6

current imputation of income is based no longer applies, and that [wife] has failed to do so."

The trial court denied wife's request that it disregard husband's travel expenses for purposes of calculating child support. The trial court credited husband with child support add-ons of $4,867 per month. This figure includes private school tuition of $975, travel expenses of $3,811 and uninsured health care expenses of $81. "The Court finds that the travel expenses incurred by Respondent allow him to maintain a 42% timeshare with Madison." The trial court denied wife's request that the *Ostler/Smith* percentage be calculated at 5.66 percent of husband's bonus, rather than 5.50 percent.

The trial court found "there is more income available to Madison for support under an *Ostler/Smith* calculation, as opposed to if [husband's] bonus income were included in a guideline child support calculation."

The trial court directed the parties to "evenly split any cost (such as school fees, uniforms and extracurricular activities) associated with Madison's education over and above the cost of her private school tuition, which at present is $975 per month. Respondent shall continue to pay Madison's private school tuition."

The trial court denied wife's request to increase spousal support and ordered husband to continue to pay spousal support in the amount of $8,000 per month. The trial court ruled:

"a. The Court finds that there is no material change in circumstances justifying a modification of spousal support, and therefore the Court need not go through a complete analysis of California Family Code § 4320.

"b. The Court finds that [wife's] claim that the parties' marital standard of living was approximately $29,000 per month is not credible. The Court finds that this marital standard of living would have been impossible, as [husband's] gross income in 2002, the last year of the parties' marriage, was only $28,250 per month.

7

"c. The Court finds that there is no evidence before it that [husband] is deliberately concealing or reducing his income to evade his support obligations.

"d. The Court finds that there is no demonstrated history of invading capital asset[s] and using the proceeds to maintain the parties' standard of living.

"e. The Court declines to impute any rate of return on [husband's] stock options.

"f. The Court finds that a future liquidation of [husband's] stock could potentially be considered income. The Court finds that some stock owned by [husband] may have been purchased by [husband] with his salary, some may be retirement funds he was awarded at the time of the parties' dissolution, and some stock options have been awarded to him as additional compensation by his employer. In the event of a liquidation, the parties are to meet and confer, and [husband] shall provide [wife] with an accounting."

The trial court granted wife's request for attorney fees in the sum of $20,000, finding a clear disparity in income between the parties.

Wife filed a timely notice of appeal from the March 14, 2012 postjudgment order.

## CONTENTIONS

Wife contends: the trial court erred in reducing guideline child support with a "negative add-on"; there is no substantial evidence to support imputing income to wife of $65,000 per year for the purposes of permanent spousal and child support; the trial court erred in omitting husband's undisputed perquisites, interest and dividend income from the computation of child support; and the trial court's stated reasons for refusing to modify spousal support are not supported by substantial evidence.

## DISCUSSION

1. *Standard of appellate review.*

The parties agree the trial court's determination with respect to both spousal support and child support is reviewed for an abuse of discretion. (*In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 825.)

8

2. *Trial court properly continued to impute $65,000 income to wife.*

Wife contends the trial court erred in imputing income to her of $65,000 per year for the purposes of both permanent spousal support and child support. The contention fails.

By way of background, the 2008 vocational evaluation by Paulette Hunnewell showed, inter alia: Wife, then age 45, had a bachelor of science degree in business and accounting. She had been employed by Hallmark for five years as an internal auditor and then was promoted to an inventory controller position. Before that, she worked two years as an auditor for Price Waterhouse. Wife was not precluded from engaging in full-time employment due to child care responsibilities. Further, wife "possesses the necessary capabilities to return to full-time employment . . . if she were motivated to do so."

In 2002, wife began, and continues to operate a home-based business, Health-E-Tips, Inc., an online wellness newsletter. Other than a two dollar profit she reported in 2006, the business lost money every year, and the losses ranged from $13,000 to $40,000 per year.

Hunnewell opined, inter alia: "[Wife] possesses the necessary education, work history and transferable skills to immediately be employed as a sales representative or in a related capacity. [Wife], initially, would earn at least $60,000 or more a year. After securing two to three years of experience in this field [wife's] earning capacity would increase to at least $70,000 to $75,000 or more a year."

Consistent with the Hunnewell evaluation, the 2009 stipulated judgment contains a finding of "[i]mputed gross annual income to [wife] of $65,000."

At the January 2012 hearing on wife's modification request, the trial court observed there had been discussion "at the prior hearings in 2008 and 2009 of how long [wife] would continue to engage in this internet-based venture if it continued to lose money . . . . And [wife] contended that she would spend only about another year at the endeavor. [¶] *Currently it appears that [wife] would be making more money if she just stayed in bed every day and did not use any of her efforts and talents, which are considerable, for Healthy Tips.* This is completely contrary to the policy of the State of

9

California for the supported party to be self-supporting within a reasonable period of time. [¶] It also shows that the support has been a disincentive for [wife] to be self-supporting. . . . There seems to be no real reason given by [wife] why she cannot be gainfully employed at this time." (Italics added.)

Given this record, there is no merit to wife's contention the evidence is insufficient to support the trial court's finding that her imputed income is $65,000 per year.

We also reject wife's argument the trial court erred in relying on the 2008 report. Although wife contends the evaluator's report was hearsay and inadmissible absent a stipulation, there is no indication that wife raised a hearsay objection below. (Evid. Code, § 353.) Therefore, the evidentiary objection is waived.

Wife also contends the 2008 Hunnewell evaluation was four years old and outdated by the time of the 2012 hearing. The trial court properly rejected this argument. To reiterate the trial court's ruling: "*The Court further finds that [wife] has failed to present any competent, admissible evidence indicating that the vocational analysis conducted by Paulette Hunnewell in 2008 should be disregarded by the Court*. The Court finds that it is not necessary to undergo an entirely new analysis of [wife's] ability to obtain a job, the job market, and the like. The Court finds that it is [wife's] obligation to show that the previously undertaken analysis of the vocational skills and opportunities upon which the current imputation of income is based no longer applies, and that [wife] has failed to do so." (Italics added.) The trial court's ruling was correct. It was wife, as the moving party on the order to show cause, who had the burden to show a material change of circumstances. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 482.)

For all these reasons, the trial court properly continued to impute $65,000 in annual income to wife.[6]

---

[6] The 2009 stipulated judgment provided for imputed income to wife of $65,000. In its 2012 ruling on wife's OSC to modify support, the trial court found wife failed to meet her burden to show a material change of circumstances. Thus, the issue here was whether a change of circumstances warranted modification of support, *not* whether the

10

3. *Trial court properly denied wife's request to increase spousal support; wife failed to meet her threshold burden to show the previously ordered amount of $8,000 monthly was inadequate at the time the award was made.*

   a. *Trial court's ruling.*

In refusing to increase spousal support from the baseline level of $8,000 per month, the trial court found "there is no material change in circumstances justifying a modification of spousal support, and therefore the Court need not go through a complete analysis of California Family Code § 4320. [¶] b. The Court finds that [wife's] claim that the parties' marital standard of living was approximately $29,000 per month is not credible. The Court finds that this marital standard of living would have been impossible, as [husband's] gross income in 2002, the last year of the parties' marriage, was only $28,250 per month."

   b. *Increase in spousal support based on increased earnings of supporting spouse requires a showing the previous support order was inadequate.*

Our "analysis begins with the general rule that for a court to consider a motion for modification of spousal support there must first be a showing of a material change of circumstances since the last prior support order, taking into consideration both the needs of the supported spouse and the ability of the supporting spouse to meet those needs. [Citation.] *A material change of circumstances may consist solely of an increase in the supporting spouse's ability to pay, but if that is the only change, then to obtain an increase in support there must also be a showing that the amount of support previously ordered had not been adequate to meet the supported spouse's reasonable needs at that time.* [Citations.] . . . [T]his rule logically permits incremental increases through multiple modifications if there are gradual increases in the supporting spouse's ability to pay." (*In re Marriage of Smith, supra,* 225 Cal.App.3d at pp. 482-483, italics added.)

---

2009 finding of imputed income was in the minors' best interests. (Fam. Code, § 4058, subd. (b); compare, *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 22.)

11

c. *We defer to trial court's credibility determination that the earlier support order was adequate.*

Wife contends the previous spousal support, i.e., the award of $8,000 per month as set forth in the 2009 stipulated judgment, did not meet the parties' marital standard of living. Wife asserts that given husband's 14 percent increase in compensation, the trial court erred in refusing to increase the level of spousal support. Wife emphasizes she has lost one-half of her child support and her housing expenses have risen.

Wife's arguments are meritless. There was no material change of circumstances warranting an increase in spousal support. The $1,200 monthly increase in wife's housing expenses was due to her buying more house than she could afford. The loss of child support for the older daughter was foreseeable and expected, as Morgan attained the age of majority.

The only thing that has changed is the increase in husband's earnings since the time of the 2009 stipulated judgment. However, as the trial court found, wife's failure to establish the $8,000 per month baseline was inadequate to meet her reasonable needs in 2009 precludes her from relying on husband's increased earnings to obtain an increase in spousal support. The trial court found wife not credible in this regard, and that determination is entitled to deference by this court.

Moreover, as husband has argued "it defies reason" that in 2009 wife would have stipulated to monthly spousal support of $8,000 if her actual marital lifestyle was $22,000 more.

On this record, the trial court properly determined the stipulated judgment's provision of $8,000 per month in spousal support was adequate to meet wife's reasonable needs as of 2009. Having determined the previous support order was adequate, the trial court properly refused to increase spousal support based on nothing more than husband's increased ability to pay.

4. *Child support issues*.

We begin with an overview of the child support situation.

As discussed, the trial court properly imputed an annual income of $65,000 to wife for purposes of calculating child support. However, wife's income, apart from support payments, is essentially nil. Therefore, wife is not contributing toward Madison's support, other than what she receives from husband.

Madison spends 42 percent, or nearly one-half, of her time with husband. At this juncture, husband pays wife $781 per month ($9,372 per year) in base child support for Madison, plus additional child support of 5.5 percent of his bonus. For 2011, the most recent year available, husband's bonus was $600,000, giving rise to additional child support payment of $33,000 for Madison for 2011. In addition, husband pays Madison's entire private school tuition ($975 per month), her health insurance, and one-half of her extracurricular activities and unreimbursed medical expenses. Wife has not shown Madison's reasonable needs are not being met.

a. *No merit to wife's contention the trial court erred in reducing base child support by husband's travel expenses*.

The record reflects the trial court reduced the guideline child support figure of $3,215 per month by $2,434 for husband's travel expenses, resulting in a net figure of $781 per month (before adding 5.5 percent of husband's bonus). Wife contends it was error to decrease child support by the amount of husband's travel expenses. She relies on *In re Marriage of Gigliotti* (1995) 33 Cal.App.4th 518, which held the trial court lacked authority to reduce the guideline amount of child support by the amount of father's expenses to travel to another state to visit with the parties' son. (*Id*. at p. 529.)

However, *Wilson v. Shea* (2001) 87 Cal.App.4th 887, rejected *Gigliotti*'s "hard and fast rule" (*id*. at p. 893) and stated "we cannot agree with any suggestion that . . .visitation cannot be a sufficient reason to vary the guideline amount in move-away cases." (*Id*. at p. 895.)

In the instant case, in 2009, the parties entered into a stipulated judgment. As of that date, both *Gigliotti* and *Wilson* were on the books. Notwithstanding the concerns

13

raised by the *Gigliotti* decision, the parties agreed to factor husband's travel expenses into the calculation of child support. The stipulated judgment, with respect to child support, expressly provides for child support add-ons, "*of which $3,600 is for travel expenses associated with [husband's] exercising his custodial rights*." (Italics added.)[7]

On this record, wife's contention the trial court erred in reducing guideline child support by the cost of husband's visitation is barred by the doctrine of invited error. (*Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 667 [invited error doctrine precludes party from taking advantage of any error committed by court at his request].) Having agreed in the stipulated judgment to factor husband's travel expenses into the calculation of child support, and that said provision was in the minors' best interests, wife cannot complain the trial court adhered to that formula in modifying support.

b. *No merit to wife's contentions with respect to husband's perquisites and interest and dividend income.*

Wife contends the trial court erred in omitting husband's monthly automobile allowance of $722 and monthly dividend and interest income of $840 from the computation of child support.

As husband argues, presumably the trial court disregarded the $722 because it represented reimbursement for his business use of his personal automobile.

---

[7] Family Code section 4065 provides in relevant part: "(a) Unless prohibited by applicable federal law, the parties may stipulate to a child support amount subject to approval of the court. However, *the court shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following*: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount." The stipulated judgment contained all of these recitals. Thus, the 2009 stipulated judgment duly acknowledged Family Code section 4065 and included a finding that the provisions in the stipulated judgment "are in the best interests of the minor children."

As for husband's $840 monthly interest and dividend income listed on his income and expense declaration, wife asserts there was no justification for the trial court's "ignoring the dividend and interest income which [husband] conceded receiving." However, it does not appear that wife requested the trial court to include this additional $840 per month in the computation of child support. This monthly income of $840 was not even mentioned in wife's reply papers below. Therefore, wife cannot be heard to complain that husband's $50,000 monthly income should have been enhanced by another $840 for purposes of determining child support.

## DISPOSITION

The March 14, 2012 order is affirmed. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

15