Filed 10/17/22  Galicia v. Izaguirre CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GUADALUPE GALICIA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL IZAGUIRRE,<br><br>Defendant and Respondent. | B316092<br><br>(Los Angeles County<br>Super. Ct. No. 19WHPT00465) |

Appeal from a judgment of the Superior Court of Los Angeles County, May Santos, Temporary Judge.  Affirmed.

Guadalupe Galicia, in pro. per.; and Robert Smith for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Guadalupe Galicia (mother) appeals from a judgment following trial regarding child custody, visitation, and child support for her daughter, H., with Michael Izaguirre (father).

Mother contends that the trial court committed evidentiary and procedural errors at trial, but we conclude mother has failed to show prejudice from any of these alleged errors. Mother also challenges the trial court's visitation order, but we conclude the order, which divided visitation equally between mother and father, was within the bounds of the trial court's wide discretion.

Last, mother contends the trial court erred by relying on the representations of father's counsel at trial regarding the calculations required by the statewide uniform child support guidelines (Fam. Code, § 4055), and by failing to make required findings for ordering an amount of child support different from the amount that is presumptively appropriate under those guidelines (Fam. Code, § 4056, subd. (a)(1)–(3)). We conclude mother has forfeited these challenges by failing to raise them before the trial court.

We therefore affirm the judgment.

## Background

Mother's brief does not provide a full description of the procedural background of this action, and she has not provided a full record to this court of the proceedings before the trial court. Nor are we aided by father, who has not filed a respondent's brief.

Nevertheless, we can discern the following from the record that mother has provided to us. Mother, unrepresented by counsel, filed a petition under the Uniform Parentage Act, Family Code section 7600 et seq., in September 2019 to establish a parental relationship between father and H., then three months

2

old, and sought orders regarding physical and legal custody, and visitation. According to the trial court docket, various proceedings occurred prior to the trial at issue in this appeal.

Despite describing nothing about these earlier proceedings, mother provided us with a reporter's transcript from proceedings on November 6, 2020, and April 19, 2021, which we summarize below.

I. **November 6, 2020 hearing**

On November 6, 2020, mother and father, each represented by counsel, appeared at a hearing before Commissioner May Santos[1] to set a trial date on mother's petition and to determine whether to increase father's visitation schedule. The parties agreed that the issues for trial were child custody, visitation, and child support.[2] The court set a trial date of April 19, 2021.

At the time of that hearing, it appears that mother had physical custody of H., except for when father had custody twice a week from 8:00 a.m. to 5:00 p.m. the following day.[3] Father was responsible for picking up and dropping off H. at mother's residence.

At the hearing, father contended visitation was going well, and sought an increase in visitation and to share equally with

---

[1] The docket includes an entry titled "Stipulation – Appointment of Court Commissioner." A minute order indicates the parties stipulated that Commissioner Santos "may hear this matter as Judge Pro Tem."

[2] Mother's petition to establish parental relationship claimed that Michael I. was H.'s father, and the record before us indicates there is no current dispute as to father's parental status.

[3] According to the transcript of the November 6 hearing, the court had established that visitation schedule on September 10, 2020.

mother in transportation duties. Mother sought a decrease in father's visitation, contending father had failed to adequately care for H. while in his custody. Following brief testimony from mother and father and argument from counsel, the court initially decided not to make any changes to the existing visitation arrangement.

Later during the hearing, the court reconsidered father's visitation schedule. Father explained that he traveled from Apple Valley to Norwalk to drop off H. with mother and that the existing schedule interfered with H.'s naps and meals. To accommodate those concerns, the court extended father's visitation schedule by two hours to allow a drop-off at 7:00 p.m. instead of 5:00 p.m.

The court also amended the existing transportation arrangements. Whereas father had been responsible for both pick-up and drop-off at mother's residence, the court ordered mother to meet father halfway between their residences for drop-off. The court found this would allow father to spend more time at home with H.

Child support was also discussed at the hearing. It appears that prior to the hearing, mother paid father monthly child support of $157. It further appears that the court had previously ordered father to file an income and expense declaration along with copies of pay stubs for the prior two months, but that as of the November 6 hearing father had failed to do so.[4] The court therefore ordered father, then unemployed, to file an income and

---

[4] Mother appears to have filed an income and expense declaration on July 20, 2020. It is not included with mother's appendix.

expense declaration, tax returns for the past two years, and evidence of his efforts to find employment.

The court also discussed father's prior employment and his current unsuccessful efforts to find work. The court concluded it would impute income to father based on his former employment and prepare a DissoMaster[5] report to determine an appropriate level of child support. The report is not in the record.

At the conclusion of the hearing, mother's counsel asked, "Support is zero?" The court responded, "Yes. I'm not going to change support right now."[6]

## II.    April 19, 2021 trial

### A.    Preliminary matters

The court held trial on April 19, 2021. Mother and father appeared and were represented by counsel. At the start of trial, the court noted receipt of mother's trial brief and exhibit list and that father had not filed either one.

Mother's trial brief asserted that father's visitation should be reduced and that he should not have joint legal custody of H. because he was failing to meet her basic needs. Regarding child support, mother's trial brief stated that "[i]f the court is inclined to deal with support, it can be dealt with at trial."

Prior to testimony, the court identified three issues for trial—child custody, visitation, and child support. Although

---

[5]    DissoMaster is computer software used by the courts and parties in family law proceedings to determine child support in accordance with statutory guidelines.

[6]    While the court's statement suggests it declined to change mother's child support at the hearing, the transcript from the April 19, 2021 trial indicates that at the November 6, 2020 hearing, the court decreased mother's monthly child support from $157 to $0.

5

mother's trial brief acknowledged that child support could be addressed at trial, mother's counsel responded that he believed trial was limited to child custody and visitation because the court had already determined child support earlier in proceedings. The court responded that it had yet to receive father's income and expense declaration or tax returns, but that "since child support is not an issue, I won't be addressing that today."

Father's counsel promptly objected, noting the absence of any "waiver of the issue of the child support at the last hearing, given that the parties were—my client was not employed, and he got employment in January. I thought the issue of support is always going to be an issue at trial, and that was the guideline issue." Father's counsel further informed the court that he had father's current income and expense declaration with him, had "mailed in" the declaration to the court the week before, and had exchanged it with mother's counsel. Father's counsel concluded by stating that child support was a "guideline support issue. Once we figure out what the custodial time is, we run the numbers. I don't have a problem with ordering guideline." The court responded, "Let's conduct the trial as to custody and visitation then."

### B. Mother's testimony

Mother testified that father had missed six visits with H. that year and was late to drop off H. on several occasions. On December 28, 2020, father was five hours late; on February 1, 2021, father's mother (who dropped off H. on that date) was 30 minutes late; and on March 29, 2021, father was ten minutes late. Mother claimed that father never gave her advance notice when he was going to be late.

On cross-examination, mother acknowledged father missed only six visits in the 15 months since the court first ordered visitation in February 2020, and that he had given mother advance notice—albeit short notice on some occasions—each time. Mother also agreed that on December 28, 2020, when father was five hours late, he called mother 20 minutes before the drop-off time to notify her he would be late, and that the parties spoke again at about 10:15 p.m. to discuss father's anticipated arrival time. She further admitted that traffic reports from that day showed at least a two-hour traffic delay.

Mother also testified H. was often dirty and had rashes and bruises following visits with father. According to mother, H. never developed rashes or bruises while under her care. Mother also testified that father's mother and brother smoked, that H.'s doctor had advised mother to keep H. away from allergens such as smoke, and that H. had been sick five times in the prior three months.

According to mother, H. would often cry and push away from father when he picked up H. from mother's residence. But mother admitted not being able to see H.'s demeanor once she was in father's car.

Mother also explained why she claimed father did not adequately care for H.'s medical needs. In December 2020, for example, father informed mother he could not find an available doctor in Victorville (where father lived at the time of trial) who accepted H.'s health insurance, and that H. had to see a doctor in Norwalk (where mother lives) to address H.'s cold and cough. Mother testified that even after she gave father contact information for H.'s pediatrician, father did not arrange a doctor's appointment for H. Mother then had to leave work to schedule

7

the doctor's appointment, and although both parents attended the doctor's appointment, mother paid the out-of-pocket costs for the visit.

Mother also described an instance involving an allergy medication for H. When father arrived to pick up H. on March 17, 2021, mother gave him allergy medication that had recently been prescribed for H. Father returned H. the following day but forgot to return the medication. Mother then had to take H. to a doctor's appointment and pay additional costs to obtain replacement medication. Following a visit several days later, father returned the medication unopened to mother.

Last, mother complained that H., then almost two years old, had started using curse words. Mother, who lived with her parents and two older brothers, denied cursing around H.[7]

## C. Father's testimony

Father's testimony primarily focused on rebutting mother's claims. For example, he explained that he was late to drop off H. on December 28, 2020, because it was snowing on the Cajon Pass. Father also explained that he missed visits on January 10 and April 14, 2021, because he was sick, and gave mother advance notice both times. He missed visits on February 7, April 4, and April 11, 2021, because he was unable to arrange transportation, and gave mother advance notice each time. And he missed a visit on March 10, 2021, because of car trouble and snow on the Cajon Pass, and again gave mother advance notice.

Father also addressed mother's testimony regarding H.'s health care. Regarding the December 2020 doctor's visit, father explained that he took H. to urgent care because of H.'s cold and

---

[7]     At the time of trial, mother's family cared for daughter when mother was at work.

8

cough, but that the urgent care would not accept H.'s health insurance. Father also explained that he did not give H. her allergy medication during her March 17, 2021 visit because H. was sick, he was focused on treating her fever, and he did not clearly understand the instructions for the allergy medication.[8]

Like mother, father testified that when he received H. from mother, H. often had rashes, scratches, bruises, dirty hair, and a dirty diaper. He explained he always made sure to give H. a clean diaper, feed her, and treat any rash before returning her to mother. Father also testified that his mother and brother did not smoke around H.

Regarding mother's claim that H. appeared unhappy when father picked her up, father testified H. cheered up quickly during his visits and that she was also happy to be with father's family. Father denied using curse words around H.

Father also testified that he was currently employed and that his mother or sister could care for H. if he was at work during H.'s visit. Moreover, because H. was asleep for most of father's shift, his work schedule did not interfere with his visits with H. Father also confirmed that H. was eligible for medical insurance through his employment.

---

[8] Father testified that he contacted the office of H.'s pediatrician to get information about the allergy medication. According to father, the pediatrician's office informed him that the medication was a five-week treatment. Mother's counsel moved to strike father's testimony, arguing it was hearsay. The court denied the motion, noting it had allowed mother "to talk about what the prescription was and what [father] was supposed to be giving her," and that it would therefore give father "a little bit of leeway."

9

Regarding transportation, father requested that the parties equally share pick-up and drop-off duties. He testified it would be easier to have mother pick up H. from his house, in case he does not have an available vehicle or is working.

**D.    Court's ruling and subsequent judgment**

Following testimony and argument from counsel, the court ordered joint legal and physical custody of H. The court emphasized that father was employed, had acted responsibly by notifying mother if he was unable to visit H., and could more easily coordinate medical care for H. now that he had medical insurance. The court also explained that it was not persuaded father was to blame for H.'s rashes or illnesses.

Finding H. was in no "higher danger" with father than she was with mother, the court rejected mother's request to limit father's visitation to 20 or 25 percent. The court concluded it would be in H.'s best interest to equally divide visitation between father and mother.[9] The court also ordered each parent to pick up H. from the other parent's residence, to share the transportation burden and alleviate mother's concerns with father being late.

After resolving visitation, father's counsel asked the court if it wanted the parties to "go out and do a DissoMaster or does the court want to set a date?" Mother's counsel objected, stating, "It's not an issue today," and that "if [father] wants to seek support, he can do it on a later date." The court disagreed, stating, "This is trial, and that was one of the trial issues. Custody, visitation,

---

[9]    Under the new visitation schedule, H. would be with mother from 10:00 a.m. on Monday to 10:00 a.m. on Wednesday, with father from 10:00 a.m. on Wednesday to 10:00 a.m. on Friday, and alternate weekend visits.

10

and child support.  Go out in the hallway and use the DissoMaster."

After a brief recess, father's counsel described his child support calculations, which resulted in mother paying $349 in monthly child support to father.  The transcript does not clearly indicate if the court had a copy of the DissoMaster report after the recess, but the court's minute order indicates it did.[10]

Mother's counsel did not object to that calculation or offer any competing calculations or figures.  Instead, he requested that mother's income be reduced for purposes of calculating child support because mother would lose a day of work due to the new transportation arrangement.  In response, the court reduced mother's monthly child support payment to $300.[11]

Mother's counsel then noted that "at the last hearing, we were told support would not be at issue.  And so we're coming here today, and they haven't filed an income and expense declaration.  I mean, we didn't file one for that reason.  So I think this procedure is unfair."

The court again rejected mother's argument, noting that at the prior hearing it "was told that this was for custody, visitation, and child support. . . .  This was for trial . . . on those issues."

---

[10]     The minute order states that "[t]he Court, after reviewing the dissomaster and hearing oral argument, finds and rules as follows:  Petitioner/Mother is ordered to pay to the Respondent/Father as and for child support for the minor child the sum of $300.00 per month . . . ."
[11]     Mother included with her appendix a DissoMaster calculation that was initially filed on April 19, 2021.  It includes handwriting stating "$300—Court's order; 1st $150, 15th $150; effective 5-1-2021 mom pay dad," and includes a stamp with Commissioner Santos's name and the date May 19, 2021.

11

The court further noted that both parties had been "reluctant to update their [income and expense declarations]. So now that we have them, rather than have another case filed to determine child support, here we are." Mother's counsel responded, "Submitted."

The court entered judgment on July 23, 2021, consistent with its ruling at the April trial. Regarding child support, the judgment incorporated an attached DissoMaster report consistent with the one described by father's counsel at the April 2021 trial.

## Discussion

Mother raises several issues in her appeal. She contends the trial court (1) made evidentiary errors at trial, primarily by allowing father's counsel to ask leading questions; (2) committed procedural errors at trial, including unfairly limiting her presentation of evidence; (3) erred by granting father equal visitation with H.; and (4) committed procedural errors in granting child support. Regarding this last contention, mother argues the court mistakenly relied on the representations of father's counsel at trial regarding the child support guideline calculations, and failed to make required findings supporting its reduction of mother's monthly child support from $349 to $300.

## I. Applicable law and standards of review

Mother filed her action under the Uniform Parentage Act (UPA). (See Fam. Code, § 7600, et seq.[12]) In a UPA proceeding, the court may issue a judgment concerning child custody, child support, visitation, "or any other matter in the best interest of the child." (§ 7637.) "Under California's statutory scheme governing child custody and visitation determinations, the

_____

[12] All subsequent undesignated statutory references are to the Family Code.

12

overarching concern is the best interest of the child." (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)

Custody and visitation determinations under the UPA are governed in part by section 3020, et seq. (§ 3021, subd. (f).) When making custody and visitation orders, a court's "primary concern" is to ensure "the health, safety, and welfare of children." (§ 3020, subd. (a).) Unless doing so is contrary to a child's best interests, a court must also ensure that "children have frequent and continuing contact with both parents" after the parents have ended their relationship. (§ 3020, subd. (b).) Subject to these and other relevant considerations, a trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child . . . ." (§ 3040, subd. (d); *In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1044 [trial court is vested with " 'wide discretion' " in making custody and visitation orders].)

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Ibid*.) "We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*Ibid*.) We "apply the substantial evidence standard to the court's factual findings" in support of custody and visitation orders. (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.)

Court-ordered child support is determined by statewide uniform guidelines. (§§ 4050–4077.) Section 4053 identifies several principles that courts shall adhere to in implementing the statewide uniform guideline, including that "[a] parent's first and principal obligation is to support the parent's minor children

13

according to the parent's circumstances and station in life" (§ 4053, subd. (a)), that "[b]oth parents are mutually responsible for the support of their children" (§ 4053, subd. (b)), that the "guideline takes into account each parent's actual income and level of responsibility for the children" (§ 4053, subd. (c)), and that "[e]ach parent should pay for the support of the children according to the parent's ability" (§ 4053, subd. (d)).

Section 4055 sets forth a mathematical formula for determining the appropriate amount of child support based on both parents' incomes.[13] (See § 4055, subds. (a), (b).) The support amount determined by the guidelines is "presumptively correct in all cases," and "only under special circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4053, subd. (k); see also § 4057, subd. (a) ["The amount of child support established by the formula provided in subdivision (a) of Section 4055 is presumed to be the correct amount of child support to be ordered."].)

When a court departs from the guideline formula for child support, it "shall state, in writing or on the record," the "amount of support that would have been ordered under the guideline formula" (§ 4056, subd. (a)(1)), the "reasons the amount of support ordered differs from the guideline formula amount" (§ 4056, subd. (a)(2)), and the "reasons the amount of support ordered is consistent with the best interests of the children" (§ 4056, subd. (a)(3)).

---

[13] Because the calculation required by that section "involves, literally, an algebraic formula," trial courts may use a computer program called DissoMaster to accomplish the child support calculation pursuant to the guidelines. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523–524, fn. 2.)

"A trial court child support order is reviewed under the abuse of discretion standard of review, and the trial court's findings of fact in connection with a child support order under the substantial evidence standard of review." (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906.)  Even so, we are mindful that " 'determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.' " (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.)

"We apply the abuse of discretion standard when reviewing the trial court's rulings on evidentiary objections." (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.)  "[A]n erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Id*. at p. 1449.)

Finally, a "judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 ["An appealed judgment is presumed correct, and the appellant must affirmatively demonstrate error."].)

## II.    Evidentiary rulings

Mother first challenges several of the court's evidentiary rulings.  She contends the court erred by allowing father's counsel to ask certain leading questions at trial.  She also contends the court unfairly admitted hearsay evidence introduced by father regarding his conversation with H.'s doctor's office, but excluded similar evidence she attempted to introduce.

15

We have reviewed the trial transcript and are not persuaded that reversal of the judgment is warranted because of any allegedly incorrect evidentiary rulings. We disagree with mother's contention that the "whole trial" was characterized by impermissible leading questions by father's counsel. Although mother identifies several exchanges between father and his counsel involving allegedly leading questions, based on our review of the transcript they fall well short of constituting the "whole trial."

Furthermore, mother did not object to some of the questions she now appears to contend were impermissibly leading. That failure to object resulted in a forfeiture of her ability to challenge such evidence on appeal. (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020 ["The failure to object or move to strike evidence at trial forfeits any challenge to the evidence on appeal."].)

Last, with respect to those evidentiary rulings to which mother did object, mother has not demonstrated, and we are not convinced—even assuming the trial court erred—that there is a reasonable probability the court would have reached a result more favorable to her regarding custody, visitation, or child support in the absence of the alleged errors. (*Twenty-Nine Palms Enterprises Corp. v. Bardos*, *supra*, 210 Cal.App.4th at p. 1449; see also Evid. Code, §§ 353, 354.)

## III. Procedural fairness

Next, mother complains that certain aspects of trial were procedurally unfair. She contends the court unfairly reminded her counsel to be "brief" in the presentation of mother's rebuttal testimony; interrupted her counsel's closing argument by asking him to place his mask over his nose; and failed to clearly identify

whether certain photographs offered by mother were admitted as exhibits.

As with mother's arguments regarding the trial court's allegedly improper evidentiary rulings, she fails to demonstrate how these alleged procedural errors caused her prejudice. (See Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 ["Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice occurred."].)

For example, mother fails to identify any rebuttal testimony she was prevented from presenting notwithstanding the court's request that her counsel be "brief." Mother likewise fails to identify what her counsel was prevented from arguing in his closing statement as a result of the court's minor interruption regarding his mask. Mother also failed to provide us with any of the trial exhibits, let alone those exhibits she is concerned may not have been admitted or considered by the trial court. In any event, it appears from the transcript that the court identified and described the photographs mother sought to introduce as exhibits, and then entered them all as a single exhibit without objection by her counsel.

In short, we are not persuaded that any of the alleged procedural errors mother complains of resulted in prejudice and warrants reversal of the judgment.[14]

## IV.  Visitation schedule

Next, it appears mother challenges the court's visitation order.  She contends the court erred by dividing visitation equally between both parents because H. is young, mother and father live far apart, father had a history of missing and being late for visits, and father did not adequately care for H.

We conclude the trial court's visitation order was not an abuse of discretion.  (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.)  The court's order divided visitation equally between father and mother consistent with the Family Code preference for ensuring that children have "frequent and continuing contact with both parents."  (§ 3020, subd. (b).)  Nor are we persuaded a different visitation order was required by evidence that father had been late or missed visits in the past.  Father provided reasonable explanations for those occasions when he missed or was late to visits and acted responsibly by ordinarily giving

---

[14]      We disagree with mother that *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 (*Elkins*), supports her argument that the trial court conducted an unfair trial.  In *Elkins*, our Supreme Court held that a trial court's application of a local rule and order calling for the admission of declarations in lieu of direct testimony at a marital dissolution trial conflicted with the hearsay rule.  (*Id.* at pp. 1344, 1359–1360.)  The trial court's application of that rule and order resulted in it excluding 34 of 36 exhibits offered by one of the parties.  (*Id.* at pp. 1344–1345.)  By contrast, mother and father testified at trial under oath subject to cross-examination, and mother fails to identify any exhibits or evidence she was prevented from offering at trial.

18

mother advance notice. Additionally, by requiring the receiving parent to pick up H. at the other parent's residence, the court minimized the potential disruption to H. if a receiving parent is late.

The record also supports the conclusion that father adequately cared for H., contrary to mother's claim. Among other things, the court found that father was not solely to blame for H.'s illnesses or rashes, could more easily coordinate medical care for H. because she would be covered by his medical insurance, and that H. was not in "any higher danger with [father] than she is with [mother]." Father also testified that H. was happy to be with him and his family during their visits.

Although we are sympathetic to mother's concern that H. is young and that travel between the parents' residences may be disruptive, mother fails to explain how those considerations make the visitation order detrimental to H.'s "health, safety, and welfare" or outweigh the legislative preference for "frequent and continuing contact with both parents." (§ 3020, subds. (a), (b).) Nor does mother adequately explain how those factors render the trial court's visitation order, well-supported by the record, an abuse of discretion.

## V. Child support order

Mother raises two challenges to the trial court's child support order. She contends the court impermissibly relied on the calculations of father's counsel regarding appropriate child support. She also contends the court departed from the uniform guideline formula for child support set forth in section 4055 without making findings required by section 4056. We conclude that reversal of the judgment is not warranted for either reason.

19

As noted, after a brief recess near the conclusion of trial to allow the parties to calculate child support under the guideline formula, the court adopted the representations of father's counsel regarding the amount of support required by the guidelines. Mother contends reversal of the judgment is required because the trial court lacked authority to adopt father's representations at trial regarding the guideline formula calculation.

We disagree. Even assuming the court accepted the representations of father's counsel at trial regarding the amount of child support required by the guideline formula,[15] father filed both his income and expense declaration and DissoMaster report the same day trial concluded. The court did not enter judgment until July 23, 2021, more than three months after trial. Hence, even if the court did not have the DissoMaster report at trial, we presume the court reviewed the parties' income and expense declarations and the DissoMaster report prior to entering judgment and did not simply rely on the representations of father's counsel at trial regarding appropriate child support under the guidelines. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133 [lower court judgment "presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness."].)

Furthermore, despite the opportunity to object, mother did not challenge any of the figures supporting the guideline formula calculation, or the guideline calculation itself. At trial, the court instructed both parties to "go out in the hallway and use the DissoMaster" and return with their calculations. After that

---

[15] As noted earlier, the court's minute order suggests the court had a copy of the DissoMaster report prepared by father's counsel following the recess.

20

recess, mother's counsel failed to challenge any of the guideline figures or calculations identified by father's counsel or offer any competing guideline figures or calculations. Nor does the record indicate that mother challenged those guideline figures or calculations during the more than three-month period between when father filed his income and expense declaration and DissoMaster report, and the court's subsequent entry of judgment.[16]

In these circumstances, we conclude mother has forfeited any challenge to the figures or calculations underlying the court's child support order. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [failure to raise challenges to child support calculations waives right "to challenge the computation of the child support award on appeal"]; *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144 ["[T]o conserve judicial resources, any errors [in child support calculations] must be brought to the trial court's attention at the trial level while the error can still be expeditiously corrected."].)

We similarly reject mother's contention that reversal of the judgment is warranted because the trial court failed to state in writing or on the record the information required for departing from the guideline formula in determining child support for H. (See § 4056, subd. (a)(1)–(3).)

---

[16] For this same reason, we reject mother's suggestion that she was prejudiced by father's failure to file his income and expense declaration until after trial. The trial transcript indicates that even though father did not file his income and expense declaration until after trial, he provided it to mother's counsel prior to trial. Also, mother had ample time to object to or challenge father's income and expense declaration prior to entry of judgment, but did not do so.

21

"A trial court persuaded by the evidence that a downward departure from the guideline is justified because the guideline amount exceeds the child's needs must comply with the procedural requirements" of section 4056, subdivision (a). (*Y.R. v. A.F.* (2017) 9 Cal.App.5th 974, 984.) Some cases have concluded that a trial court's failure to provide the information required by section 4056, subdivision (a), warrants reversal if the missing information is not otherwise discernable from the record. (See, e.g., *Y.R. v. A.F.*, at p. 985 ["the court's failure to comply with the statute's procedural requirements, standing alone, constitutes grounds for reversal of a child support order and remand for compliance"]; *In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 [failure to make findings required by section 4056, subd. (a) "precludes effective appellate review and may constitute reversible error if the missing information is not otherwise discernible from the record"]; *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 318 ["[G]iven the facial noncompliance of the judgment with sections 4055 and 4056, the judgment must be reversed and remanded for further proceedings in conformity with those statutes."]).

However, at least one case concluded that if a trial court issues a child support order that fails to supply the information required by section 4056, subdivision (a), a dissatisfied party may not "simply appeal and ask for reversal because the court has not supplied the necessary information when it varied from the guideline support formula," but is "required to bring the missing information to the trial court's attention and give it an opportunity to supply it." (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1451 (*Rojas*).)

We conclude *Rojas* is persuasive here. The record fails to show that mother raised any objection to the trial court regarding its failure to supply the information required by section 4056, subdivision (a). Mother did not object after the court announced its child support ruling at trial. Nor did she object after trial, even though the court entered its judgment more than three months later. And mother had a further opportunity to object by filing a motion to vacate the judgment (see *Rojas*, *supra*, 50 Cal.App.4th at pp. 1451–1452) but did not do so. We therefore conclude the issue is not preserved for our review.[17]

---

[17] Although we conclude mother has forfeited her challenge to this issue, we note that mother requested the downward departure from the guideline formula amount and the court granted her request. Mother fails to explain how she is prejudiced by the absence of findings supporting that departure. Indeed, she did not dispute the guideline figures or calculations described by father's counsel at trial, and the court's decision to depart from the guideline formula benefitted her, the child support payor, not father. (Cf. *Tracy v. Tracy* (1963) 213 Cal.App.2d 359, 363 [noting " ' " 'fundamental rule of appellate procedure that a judgment or order will not be disturbed on appeal prosecuted by a party who consented to it.' " ' "].)

**DISPOSITION**

The judgment is affirmed.  Mother shall bear her own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        EDMON, P. J.


We concur:



        LAVIN, J.



        ADAMS, J.*

_____

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.